**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS WOODWARD, and<br>MADISON WOODWARD III,<br><br>Plaintiffs,<br>v.<br><br>AMANDA LEFTON, in her official capacity as Commissioner of the New York Department of Environmental Conservation; CATHERINE DICKERT, in her official capacity as Director of the New York Department of Environmental Conservation's Division of Mineral Resources; and LETITIA JAMES, in her official capacity as Attorney General of the State of New York, and KATHY HOCHUL, in her official capacity as Governor of the State of New York,<br><br>Defendants. | Civil Action No.:<br>3:26-cv-00736-AJB-CBF<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ............ ii

INTRODUCTION ............ 1

STANDARD OF REVIEW ............ 2

ARGUMENT ............ 3

**The motion to dismiss should be denied because the Woodwards' inability to obtain a drilling permit involves an ongoing violation of federal law and thus the Court can award them prospective relief** ............ 3

A. The ongoing nature of the Woodwards' injury shows that sovereign immunity does not bar their claims for equitable relief ............ 4

1. The Second Circuit allows *Ex parte Young* claims in the takings context ............ 6
2. The State Officials' other sovereign immunity arguments miss the mark ............ 7

B. The Woodwards do not have an adequate remedy at law for the ongoing violations of federal law, so equitable relief is appropriate ............ 9

1. Section 1983 provides a right to a federal forum and a federal remedy to enforce federal rights ............ 10
2. *Knick* confirms that the Section 1983 right to a federal forum and federal remedy applies the same in the takings context ............ 11
3. The State Officials' attempts to distinguish *Knick* fail ............ 12

C. The ongoing nature of the Constitutional violation allows the Woodwards to seek declaratory relief in federal court ............ 13

D. The ongoing violation of federal Constitutional rights shows that the Woodwards have standing ............ 16

1. The State Officials' attacks on standing fail because they misunderstand that the Woodwards' injury is ongoing ............ 17

E. The ongoing violation of federal law shows that the Woodwards' claims are timely ............ 19

1. The State Officials' cases finding takings claims time-barred are distinguishable ............ 21
2. The Woodwards' claims satisfy the futility exception to ripeness ............ 23
3. Alternatively, the Woodwards can at a minimum challenge the bans on gelled propane hydraulic fracturing and CO2 fracturing ............ 23

CONCLUSION ............ 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*74 Pinehurst LLC v. New York*,
59 F.4th 557 (2d Cir. 2023) .......... 6-7, 9, 22

*Admiral Insurance Co. v. Niagara Transformer Corp.*,
57 F.4th 85 (2d Cir. 2023) .......... 14

*Amerada Hess Corp. v. Acampora*,
486 N.Y.S.2d 38 (N.Y. App. Div. 1985) .......... 19-20

*Ass'n of Am. Med. Colls. v. Carey*,
482 F. Supp. 1358 (N.D.N.Y. 1980) .......... 9

*Breland v. City of Fairhope*,
229 So. 3d 1078 (Ala. 2016) .......... 20-21

*Brown v. Legal Found. of Wash.*,
538 U.S. 216 (2003) .......... 19

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) .......... 2–3

*Cedar Point Nursery v. Hassid*,
594 U.S. 139 (2021) .......... 4-5, 9-10, 19

*Christian v. James*,
176 F.4th 189 (2d Cir. 2026) .......... 22

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 7

*Dorce v. City of New York*,
2 F.4th 82 (2d Cir. 2021) .......... 18

*Edelman v. Jordan*,
415 U.S. 651 (1974) .......... 6

*EEE Minerals, LLC v. North Dakota*,
81 F.4th 809 (8th Cir. 2023) .......... 8

*E. Enters. v. Apfel*,
524 U.S. 498 (1998) .......... 5

*EklecCo NewCo LLC v. Town of Clarkstown*,
No. 16-CV-6492, 2018 WL 3023159 (S.D.N.Y. June 18, 2018) ............................ 21

*Ex parte Young*,
209 U.S. 123 (1908). ....................................................................... *passim*

*Frey v. City of New York*,
157 F.4th 118 (2d Cir. 2025) ........................................................................ 17

*Gilbert v. City of Cambridge*,
932 F.2d 51 (1st Cir. 1991) ........................................................................... 21

*Hoffman v. Am. Inst. of Indian Stud.*,
No. 21-cv-1105, 2024 WL 3415812 (N.D.N.Y. July 15, 2024) ............................ 15

*James v. Hegar*,
86 F.4th 1076 (5th Cir. 2023) .................................................................. 7, 18

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
480 U.S. 470 (1987) .................................................................................... 22

*Knick v. Twp. of Scott*,
588 U.S. 180 (2019) ................................................................................ *passim*

*Kuhnle Brothers, Inc. v. County of Geauga*,
103 F.3d 516 (6th Cir. 1997) ......................................................................... 21

*Levald, Inc. v. City of Palm Desert*,
998 F.2d 680 (9th Cir. 1993) ......................................................................... 21

*Lucas v. S.C. Coastal Council*,
505 U.S. 1003 (1992) ...................................................................................... 1

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................................ 3

*Lunney v. United States*,
319 F.3d 550 (2d Cir. 2003) ............................................................................. 2

*Mazzei v. The Money Store*,
62 F.4th 88 (2d Cir. 2023) ................................................................................ 3

*McNeese v. Board of Education*,
373 U.S. 668 (1963) .................................................................................. 10-11

*Mitchum v. Foster*,
407 U.S. 225 (1972) ........................................................................ 2, 9, 11, 15

*Murphy v. New Milford Zoning Comm'n.*,
402 F.3d 342 (2d Cir. 2005) ........ 23

*Narrigan v. Goldberg*,
170 F.4th 14 (1st Cir. 2026) ........ 18

*Ohio Sec. Ins. Co. v. Veteran Constr. Servs., LLC*,
No. 23-CV-257, 2024 WL 1287583 (D. Conn. Mar. 26, 2024) ........ 15

*Pakdel v. City & Cnty. of S.F.*,
594 U.S. 474 (2021) ........ 23

*Palazzolo v. Rhode Island*,
533 U.S. 606 (2001) ........ 23

*Patsy v. Bd. of Regents of State of Fla.*,
457 U.S. 496 (1982) ........ 15

*Pino v. Ryan*,
49 F.3d 51 (2d Cir. 1995) ........ 19-20

*Sanchez v. Torrez*,
173 F.4th 1202 (10th Cir. 2026) ........ *passim*

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996) ........ 16

*T.W. v. New York State Board of Law Examiners*,
110 F.4th 71 (2d Cir. 2024) ........ 7-8

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
535 U.S. 302 (2002) ........ 24

*Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.*,
685 F. Supp. 3d 187 (S.D.N.Y. 2023) ........ 15

*Tyler v. Hennepin Cnty.*,
598 U.S. 631 (2023) ........ 3, 19

*United States v. Salerno*,
481 U.S. 739 (1987) ........ 22

*Va. Hosp. Ass'n v. Baliles*,
868 F.2d 653 (4th Cir. 1989) ........ 20

*Vargo v. Casey*,
756 F. Supp. 3d 672 (W.D. Wis. 2024) ........ 8, 10-11

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
535 U.S. 635 (2002) ........ 4–5

*Vitagliano v. Cnty. of Westchester*,
71 F.4th 130 (2d Cir. 2023) ........ 16-17

*Wallace v. New York*,
40 F. Supp. 3d 278 (E.D.N.Y. 2014) ........ 19-20

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*,
473 U.S. 172 (1985) ........ 11

*Youell v. Exxon Corp.*,
74 F.3d 373 (2d Cir. 1996) ........ 16

**U.S. Constitution**

U.S. Const. amend. V ........ 1, 12-13

U.S. Const. amend. XI ........ 2, 4, 16

**Statutes**

N.Y. Env't Conserv. Law § 23-0501(3)(a) ........ 23

N.Y. Env't Conserv. Law § 23-0501(3)(b) ........ 23-24

**Other Authorities**

National Archives, *"The Buck Stops Here" Desk Sign*,
https://tinyurl.com/3587cte2 ........ 9

Stipulated J. After Remand, *Cedar Point Nursery v. Hassid*,
No. 1:16-cv-00185-NONE-BAM (E.D. Cal. Sep. 1, 2021), Dkt. No. 39 ........ 4

## INTRODUCTION

Congress enacted Section 1983 so that individuals would have the right to seek a federal remedy in a federal forum to stop an ongoing violation of federal law (such as the ongoing Fifth Amendment violation occurring here). This principle unravels the common thread of the Defendants' (State Officials) arguments for dismissal.

Plaintiffs Thomas Woodward and Madison Woodward III own the minerals to a property (but not the surface) in Delaware County that has natural gas resources. First Am. Compl. ¶¶ 8, 15, 44-48, 54, 58-60, Dkt. No. 9 (FAC). They hope to exercise their constitutional rights to develop their mineral estate's gas and create energy affordability and abundance for all of society. FAC ¶¶ 61-62, 69-72. But the Defendants continue to enforce New York's ban on approving permits for gas drilling that use the types of fracturing[1] that would allow the Woodwards to pursue the profitable extraction of gas. When the government regulates the use of an owner's property so that it loses all economic use without just compensation, it violates the Fifth Amendment. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992).

The State Officials' motion to dismiss revolves around two incorrect theories. *First*, they view this case as involving retrospective relief for past injuries. But that is not the case. The Woodwards do not sue over the loss of possession or title (events in the past). Instead, they seek equitable relief from an ongoing restriction of the use of property. Their ultimate goal is to successfully obtain a drilling permit in the

[1] The ban does not apply to fracturing techniques that use less than 300,000 gallons of water to complete a well. But this low-volume fracturing is inadequate to profitably reach the Marcellus and Utica shale formations on the Woodwards' mineral estate. FAC ¶¶ 37, 66-68.

future. To that end, they seek an injunction that prevents the State Officials from enforcing the fracturing ban as to them in the permitting process. This classic prospective relief for an ongoing violation of federal law does not trigger sovereign immunity. It also shows their standing to challenge the fracturing ban's future enforcement. And because they suffer injuries in the present and future, their claims are timely.

*Second*, the State Officials incorrectly theorize that federal courts must punt Section 1983 claims to state court whenever the Eleventh Amendment blocks a federal legal remedy. But Section 1983's history, purpose, and jurisprudence bely that notion. Congress enacted it to "interpose the federal courts between the States and the people, as guardians of the people's federal rights" by giving individuals a federal remedy and a federal forum. *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). Thus, the Woodwards have a right to seek injunctive and declaratory relief in federal court regardless of any legal remedies available in state court. For these reasons and those below, the State Officials' motion to dismiss should be denied.

## STANDARD OF REVIEW

The State Officials' motion to dismiss for lack of standing under Rule 12(b)(1) makes a "facial challenge" to subject matter jurisdiction because they contest standing "based solely on the allegations of the complaint." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). In a facial challenge, the court accepts "'as true all material factual allegations of the complaint and draws all reasonable inferences in favor of the plaintiff.'" *Id.* at 57 (cleaned up) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). The court also "'presumes that general

allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 58 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up)). At this "initial stage," the Woodwards do not need to "prove" their "injury." *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 637 (2023). Instead, they merely need to "plausibly plead on the face of their complaint that" they suffered "harm" and "that is enough for now." *Id.* (cleaned up).

Similarly, courts evaluate Rule 12(b)(6) motions by "construing the complaint liberally, accept[ing] all factual allegations in the complaint as true, and draw[ing] all reasonable inferences in the plaintiff's favor." *Mazzei v. The Money Store*, 62 F.4th 88, 92 (2d Cir. 2023).

## ARGUMENT

### The motion to dismiss should be denied because the Woodwards' inability to obtain a drilling permit involves an ongoing violation of federal law and thus the Court can award them prospective relief

The motion to dismiss should be denied for the following five reasons. *First*, *Ex parte Young* shows that sovereign immunity does not block prospective relief for ongoing injuries like the Woodwards' ongoing inability to apply for a drilling permit. *Second*, equitable relief is appropriate because the Woodwards are entitled to a federal remedy and there is no remedy at law available to them in federal court. *Third*, declaratory relief is appropriate for remedying ongoing violations of federal law that lack federal legal remedies. *Fourth*, the Woodwards have standing to seek prospective equitable relief because they experience an ongoing injury. *Fifth*, the statute of limitations does not apply because the Woodwards seek only prospective relief and their injury is ongoing in the present and future.

### A. The ongoing nature of the Woodwards' injury shows that sovereign immunity does not bar their claims for equitable relief

Sovereign immunity does not bar the Woodwards' claims. While the Eleventh Amendment bars legal remedies (just compensation) under Section 1983, *Ex parte Young* allows the Woodwards to seek injunctive relief against state officials acting in their official capacities. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned up). The Woodwards' complaint satisfies this standard. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 145 (2021); *Sanchez v. Torrez,* 173 F.4th 1202, 1220 (10th Cir. 2026).

The Woodwards sue to stop state officials' enforcement of a regulation's future infringements, like the plaintiffs in *Cedar Point*. There, farmers sued California state officials to stop their enforcement of a regulation granting union organizers a right to access their farms to solicit and organize the farmers' employees. 594 U.S. at 144. The farmers sought "declaratory and injunctive relief." *Id.* at 145; *see also id.* at 179 (Breyer, J., dissenting). After the Supreme Court in *Cedar Point* held that the access regulation effectuated a taking, the Court remanded the case, and the district court entered an injunction prohibiting California officials from enforcing the access regulation. *See* Stipulated J. After Remand, *Cedar Point Nursery v. Hassid*, No. 1:16-cv-00185-NONE-BAM (E.D. Cal. Sep. 1, 2021), Dkt. No. 39.

While the Court in *Cedar Point* did not expressly discuss *Ex parte Young*, it nonetheless allowed equitable relief against state officials for violating the Takings Clause.[2] As noted above, such relief can be awarded when a "straightforward inquiry" shows that the plaintiff faces an "ongoing violation of federal law." *Verizon Md., Inc.*, 535 U.S. at 645. In short, the Court held that a regulation that allows third parties to enter property at regular intervals in the future is an ongoing injury.

Here, this Court can similarly allow equitable relief against state officials for violating the Takings Clause. The comprehensive fracturing ban inflicts ongoing injury by allowing state officials to deny the Woodwards permits to drill for natural gas in the future and fully enjoy their mineral estate.

*Sanchez* bolsters this reasoning. 173 F.4th at 1221. There, property owners sued to enjoin state officials from enforcing a state supreme court decision declaring that privately owned beds of public waters were subject to "a preexisting easement" that allowed the public to access these waterbeds. *Id.* at 1210. The property owners claimed that the court decision rose to the level of a judicial taking. *Id.* at 1228.

The Tenth Circuit held that the claims alleged "'an ongoing violation of federal law and seek relief properly characterized as prospective.'" *Id.* (quoting *Verizon Md., Inc.*, 535 U.S. at 645 (cleaned up)). It explained that the property owners "do not seek compensation for past deprivations of their right to exclude." *Id.* Instead, they

[2] *Cedar Point* did not explicitly address the availability of *Ex parte Young* relief, but *Cedar Point* taking it for granted speaks volumes nonetheless. *Cf. E. Enters. v. Apfel*, 524 U.S. 498, 522 (1998) ("'[N]either should we disregard the implications of an exercise of judicial authority assumed to be proper' in previous cases." (quotation omitted)).

"request a prospective injunction against future deprivations of their right to exclude without compensation." *Id.* at 1219. It dismissed the fact that an injunction might cost the state some money, reasoning that ""an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young* . . . ." *Id.* (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). The court also noted that an injunction would not require the officials to pay compensation, but instead simply gives "the choice of providing just compensation or abandoning efforts to enforce [the state supreme court] holding." *Id.*

The Woodwards' injury is similarly properly characterized as prospective. The Woodwards do not seek compensation for past violations of their right to obtain a drilling permit. Instead, they seek a prospective injunction against future deprivations of that right. They want a permitting process free of the ban on fracturing moving forward. Under *Sanchez*'s reasoning, this amounts to an ongoing violation that fits within *Ex parte Young*'s exception to sovereign immunity.

#### 1. *The Second Circuit allows Ex parte Young claims in the takings context*

Contrary to the State Officials' suggestions, the Second Circuit has not applied sovereign immunity to all takings claims seeking injunctive relief where legal remedies exist in state court. Mem. of Law in Supp. of Defs.' Mot. to Dismiss 20, Dkt. No. 32-1 (State Official MTD) (citing *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023)). Instead, *74 Pinehurst LLC* noted that "claims for prospective relief against state officials in their official capacities" is an "exception" to sovereign immunity. *Id.* at 570 (citing *Ex parte Young*, 209 U.S. at 159-60). Thus, while the

court concluded that "sovereign immunity barred [the landlords'] takings claims . . . to the extent they sought monetary relief," it said nothing about prospective relief like Woodwards seek here. *Id.*

**2. *The State Officials' other sovereign immunity arguments miss the mark***

The other cases that the State Officials cite for their sovereign immunity argument all involve classic past injuries that cannot reoccur. State Official MTD 21-23. *James v. Hegar* involved seeking injunctive relief for the return of private bank accounts that escheated to the state treasury improperly under a state's unclaimed property law. 86 F.4th 1076, 1079 (5th Cir. 2023). The court held that seeking the "return" of property was not an ongoing violation and the property owners failed to identify other assets that might escheat under the challenged law in the future. *Id.* at 1082 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)).

But here, the Woodwards do not seek the return of physical property. Instead, the Woodwards allege that but for the comprehensive ban on fracturing, they would lease their property for natural gas production. FAC ¶¶ 69, 71. This means the ban injures them now and in the future by preventing any potential operator leasing the mineral estate from getting the required drilling permits.[3]

*T.W. v. New York State Board of Law Examiners* also involved a past injury because the bar license applicant who challenged the bar exam's lack of disability

[3] The State Officials cite part of paragraph 80 in an attempt to portray the Woodwards as seeking the return of a physical estate. State Official MTD 16. But the paragraph instead focuses on the State Officials' "enforcement of" the fracturing ban as to their mineral estate. FAC ¶ 80 (emphasis added).

accommodations had passed the test on the third attempt. And applicants only need to pass the bar exam once. 110 F.4th 71, 94 (2d Cir. 2024). Thus, *T.W.*'s discussion of using declaratory relief to obtain money damages for retrospective relief is inapplicable. State Official MTD 22 (citing 110 F.4th at 91-93).

*EEE Minerals, LLC v. North Dakota* is similarly inapposite because it involved a physical confiscation that had already occurred. 81 F.4th 809 (8th Cir. 2023). There, North Dakota passed a state law in 2017 claiming that the family's minerals belonged to the state—i.e., the state confiscated title. *Id.* at 813. The state also started leasing out the family's minerals for oil and gas exploration—i.e., the state took physical possession. *Id.* The family sued for damages and also "an injunction prohibiting the defendants from claiming ownership of the mineral interests under state law" relying on *Ex parte Young*. *Id.* The court held that *Ex parte Young* did not apply in that case because the family's representative "simply repackage[d] her claim for monetary relief as a request for an injunction that cures past injuries and requires the payment of just compensation." *Id.* at 816. But the court did not hold that *Ex parte Young* never applies in a takings case. Indeed, the District Court for the Western District of Wisconsin has opined that *EEE Minerals'* "effect" was that "even in a takings case, the *Ex parte Young* exception is viable." *Vargo v. Casey*, 756 F. Supp. 3d 672, 684 (W.D. Wis. 2024).

Unlike the family in *EEE Minerals*, the Woodwards do not seek monetary relief. They also do not allege that their injury stems from the State assuming title for their mineral estate and dispossessing them of it by leasing it out to others. Instead, they

challenge ongoing enforcement of restrictions on the estate's use. At bottom, *Ex parte Young* allows the Woodwards to sue to stop the ongoing violation of their federal rights in the permitting process.[4]

**B. The Woodwards do not have an adequate remedy at law for the ongoing violations of federal law, so equitable relief is appropriate**

The ongoing nature of the Woodwards' injury also entitles them to seek injunctive relief. "Congress plainly authorized the federal courts to issue injunctions in [Section] 1983 actions." *Mitchum*, 407 U.S. at 242; *see also Cedar Point*, 594 U.S. at 145; *Sanchez*, 173 F.4th at 1221. While a court may not award an injunction "'unless no adequate remedy at law exists,'" the Woodwards have satisfied that condition here. *Sanchez*, 173 F.4th at 1222 (quotation omitted). Sovereign immunity bars the Woodwards from seeking remedies at law (just compensation) from New York and state officials sued in their official capacities. *74 Pinehurst LLC*, 59 F.4th at 570. Thus, without any remedy at law available to the Woodwards in federal court, this Court may award equitable relief to stop ongoing violations of federal law.

The Woodwards' requested relief would resemble the relief awarded in *Cedar Point*. There the farmers sought "declaratory and injunctive relief" against state officials that enforced the union access regulation. 594 U.S. at 145. The Supreme Court blessed this relief by reaching the merits and holding that a taking occurred.

[4] Governor Houchul is a proper *Ex parte Young* defendant. This Court in a published opinion allowed plaintiffs to sue the governor given the governor's constitutional duty to execute state law. *Ass'n of Am. Med. Colls. v. Carey*, 482 F. Supp. 1358, 1364 (N.D.N.Y. 1980). Indeed, President Truman famously displayed a wooden sign on his White House desk that said: "The BUCK STOPS here!" National Archives, *"The Buck Stops Here" Desk Sign*, https://tinyurl.com/3587cte2. The State Officials' brief only cites nonbinding or unpublished cases on this point.

*Id.* at 162. Thus, *Cedar Point* enables this Court to issue an injunction.

*Sanchez* is in accord. 173 F.4th at 1222. The state officials in that case claimed that the property owners could not seek injunctive relief against them in federal court because they could ultimately seek adequate remedies at law in state court. *Id.* at 1220. The Tenth Circuit rejected the state officials' argument. *Id.* at 1221. The court acknowledged that "a court may not *award* injunctive relief unless no adequate remedy at law exists," but held that the property owners could still seek it in federal court under *Ex parte Young* regardless of the availability of monetary relief in state court. *Id.* at 1222; *see also Vargo*, 756 F. Supp. 3d at 685 (similar). So too here.

### 1. ***Section 1983 provides a right to a federal forum and a federal remedy to enforce federal rights***

The State Officials' argument that the Woodwards have adequate remedies at law in state court—that preclude them from seeking injunctive relief in federal court—would gut Section 1983's purpose. The statute's history and jurisprudence confirm that every individual has the right to a federal forum to seek a federal remedy to enforce federal rights.

In *McNeese v. Board of Education*, the Supreme Court rejected the contention that individuals had to first seek a state remedy before they could sue in federal court under Section 1983. 373 U.S. 668, 674 (1963). The Court reasoned that "'[i]t is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.'" *Id.* at 671 (quotation omitted). The Court explained that the history of Section 1983 shows that the Congress designed it

to "provide a remedy in the federal courts supplementary to any remedy any State might have." *Id.* at 672.

Likewise, the Court explained in *Mitchum v. Foster* that "Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." 407 U.S. at 239 (emphasis added); *see also* *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019).

### 2. *Knick confirms that the Section 1983 right to a federal forum and federal remedy applies the same in the takings context*

*Knick* confirms that the Section 1983 principle of the right to a federal forum and federal remedy applies to takings claims too. There, the district court dismissed a property owner's takings claim against a local government because she had not first sought a just compensation remedy from a state court. 588 U.S. at 187. The district court had applied the old regime of *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985), which required takings plaintiffs to first seek compensation in state court before filing a Section 1983 action in federal court if the state court denied relief. *Knick*, 588 U.S. at 187.

*Knick* overruled *Williamson County's* state-litigation requirement and held that property owners have a right under Section 1983 to immediately access federal court when they suffer a taking. *Knick*, 588 U.S. at 185. The Court reasoned that shunting takings claims to state court had the effect of "relegat[ing] the Takings Clause 'to the status of a poor relation' among the provisions of the Bill of Rights." *Id.* at 189

(quotation omitted). The Court emphasized that Section 1983 gives takings plaintiffs "the guarantee of a federal forum" and that this "rings hollow" if they "are forced to litigate their claims in state court." 588 U.S. at 185. The Court also emphasized that "Plaintiffs asserting any other constitutional claim are guaranteed a federal forum under § 1983, but the state-litigation requirement "'hand[s] authority over federal takings claims to state courts.'" *Id.* at 189 (quotation omitted).

*Knick's* reasoning surrounding a federal forum applies to the Woodwards' takings claim. Forcing them to litigate in state court would effectively hand authority over federal takings claims involving state officials to state court and defeats Section 1983's purpose. And, as a practical matter, it would reinstate *Williamson County*'s state litigation requirement for takings suits against state officials, rendering *Knick*'s guarantee of a federal forum illusory. Thus, because the Woodwards lack a remedy at law in federal court, they may pursue injunctive relief in federal court.

**3. *The State Officials' attempts to distinguish Knick fail***

Defendant State Officials' attempts to read *Knick* as not opening the federal courthouse doors to all Fifth Amendment takings conflicts with *Knick's* discussion of the broader remedial purposes of Section 1983. The State Officials point to *Knick* saying that "a plaintiff cannot obtain equitable relief for a taking if 'an adequate provision for obtaining just compensation exists,'" but that reads that language in *Knick* out of context. State Official MTD 12 (quoting *Knick*, 588 U.S. at 201). As the Tenth Circuit opined in *Sanchez*, that language simply reflects "the well-settled

principle that equitable remedies are unavailable where there is an adequate legal remedy." 173 F.4th at 1221.

Similarly, when *Knick* says: "because . . . nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable," it does so in the broader discussion of how historically state governments did not offer just compensation remedies. 588 U.S. at 199-201. *Knick's* conclusion based on this history was that "the availability of the procedure" did not "somehow prevent the [taking] violation from occurring in the first place." 588 U.S. at 201 (cleaned up).

Thus, *Knick*'s discussion of equitable remedies was not evaluating whether the availability of state just compensation precludes equitable relief in *federal* court. Rather, it just means that a state court will not award an injunction if a legal remedy exists in state court. And a federal court will not award an injunction if a legal remedy exists in federal court. Indeed, the portion of the opinion noting that "'[g]overnments need not fear that . . . federal courts [will] invalidate their regulations as unconstitutional,'" then immediately cites the "Tucker Act" (i.e., a <u>federal</u> legal remedy) as an example for why injunctive relief might be foreclosed. *Id.* at 205.

All said, the Woodwards' Section 1983 right to a federal forum and federal remedy, and the lack of a remedy at law in the federal forum, shows the propriety of federal injunctive relief here.

### C. The ongoing nature of the Constitutional violation allows the Woodwards to seek declaratory relief in federal court

Because the State Officials violate the Woodwards' Fifth Amendment rights on an

ongoing basis, they can also seek declaratory relief. The Second Circuit laid out six factors in *Admiral Insurance Co. v. Niagara Transformer Corp.* that decide whether courts should exercise jurisdiction under the Declaratory Judgment Act:

(1) Whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved;

(2) Whether such a judgment would finalize the controversy and offer relief from uncertainty;

(3) Whether the proposed remedy is being used merely for procedural fencing or a race to res judicata;

(4) Whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court;

(5) Whether there is a better or more effective remedy;

(6) Whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

57 F.4th 85, 100 (2d Cir. 2023) (cleaned up). These weigh in favor of jurisdiction here.

*First*, exercising jurisdiction will serve a useful purpose in clarifying and settling the legal issues surrounding the fracturing ban's constitutionality.

*Second*, and relatedly, a declaratory judgment would finalize the controversy and offer relief from uncertainty as a practical matter because the State is likely to pay just compensation if this Court issues a declaratory judgment. Even if not, the Woodwards could then file in state court simply to enforce this Court's judgment. This would vindicate Section 1983's purpose of having federal rights resolved in a federal forum. Contrary to the State's concerns of piecemeal litigation, this Court could adjudicate the issues related to the merits, including the timeliness of the claims, and

the appropriate level of just compensation. Thus, the only thing for the state court to do would be to enforce the judgment.

*Third*, the Woodwards are not engaging in procedural fencing by exercising their right to choose the forum. Section 1983 provides "dual or concurrent forums in the state and federal system, enabling the plaintiff to choose the forum in which to seek relief." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 506 (1982).

*Fourth*, exercising jurisdiction would not increase friction between legal systems or encroach on a state court's domain given that a state court action is not pending.[5] More fundamentally, the "authority over federal takings claims" belongs to federal courts. *Knick*, 588 U.S. at 189 (quotation omitted)). To the extent that this creates friction, it is friction that Congress blessed by enacting Section 1983. *See Mitchum*, 407 U.S. at 242 ("The legislative history of Section 1983 makes evident that Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights." (cleaned up)).

*Fifth*, there is not a better or more effective remedy. If the Court disagrees with the Woodwards and decides that it cannot award injunctive relief, declaratory relief becomes the *only* federal remedy. Section 1983 creates a federal remedy to supplement whatever exists in state court. Holding that state court remedies are a

[5] The lack of a pending state action further distinguishes the cases that the State Officials' cite for the fourth factor. State Official MTD 17 (citing *Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.*, 685 F. Supp. 3d 187, 216 (S.D.N.Y. 2023); *Ohio Sec. Ins. Co. v. Veteran Constr. Servs., LLC*, No. 23-CV-257, 2024 WL 1287583, at *8 (D. Conn. Mar. 26, 2024); *Hoffman v. Am. Inst. of Indian Stud.*, No. 21-cv-1105, 2024 WL 3415812, at *5 (N.D.N.Y. July 15, 2024)).

better remedy here undermines that purpose. And it effectively resurrects state exhaustion requirements for takings claims that *Knick* rejected. It also "hand[s] authority" of interpreting the Takings Clause over to state courts. *Knick*, 588 U.S. at 189 (quotation omitted)). The Second Circuit also cautioned in *Youell v. Exxon Corp.* against declining declaratory judgment relief in situations that "'cede federal review of an issue of federal law'" to a state court. 74 F.3d 373, 376 (2d Cir. 1996) (quotation omitted).

*Sixth*, judicial efficiency and judicial economy favors exercising jurisdiction. This Court can adjudicate the bulk of the case. Further, if the State Officials were concerned about efficiency, they could always waive sovereign immunity and allow the Woodwards to seek just compensation in this Court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 65 (1996). The State Officials may say that they cannot be expected to waive the Eleventh Amendment. But the Woodwards have a Section 1983 right to a federal forum and federal remedy. The State Officials cannot force them to waive that right by forcing them to litigate in state court.

In short, even if the Court finds that it cannot award injunctive relief, the Court would effectuate Section 1983's promise of a federal forum and federal remedy by awarding declaratory relief.

**D. The ongoing violation of federal Constitutional rights shows that the Woodwards have standing**

The Woodwards have standing. Article III requires that a plaintiff prove injury, causation, and redressability. *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023). The State Officials only challenge whether the Woodwards have

suffered an injury. State Official MTD 9.

For the threatened enforcement of a law to create injury in fact, a plaintiff must "demonstrate: (1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest'; (2) that the intended conduct is "proscribed by" the challenged law; and (3) that 'there exists a credible threat of prosecution thereunder.'" *Vitagliano*, 71 F.4th at 136; *see also Frey v. City of New York*, 157 F.4th 118, 137 (2d Cir. 2025); *Sanchez*, 173 F.4th at 1213. The Woodwards satisfy all three elements here.

First, they have alleged an intention to engage in a course of conduct to exercise their Constitutional rights. They allege their desire to lease their property for natural gas fracturing, and they would do so "[b]ut for" the ban on approving fracturing permits and the ban on drilling without a permit. FAC ¶ 71. Second, they allege that state law bans their desired conduct. FAC ¶¶ 69-70. Third, they allege credible threats of prosecution because the various phases of the fracturing ban are "'recent and not moribund.'" *See Vitagliano*, 71 F.4th at 138 (quotation omitted). Thus, they have standing.

**1. *The State Officials' attacks on standing fail because they misunderstand that the Woodwards' injury is ongoing***

Contrary to the State Officials' arguments, the Woodwards allege a future injury. State Official MTD 9-10. They challenge the ongoing enforcement of the ban on them obtaining permits to engage in fracturing, which, as argued above, is an ongoing future injury. *Sanchez* held that the landowners there had standing to bring a pre-enforcement challenge to prevent the state officials in that case from enforcing the

state supreme court decision's application to their waterbeds. 173 F.4th at 1213. That approach also applies to the Woodwards' ongoing injury.

The State Officials' cases on this point are inapposite because they involved plaintiffs seeking the return of physical property, which is a quintessential past injury. State Official MTD 9-10. *Dorce v. City of New York* involved a plaintiff seeking the return of title to a property taken in a state-run foreclosure program and who did not allege intentions to purchase property that might be subject to the program in the future. 2 F.4th 82, 87 (2d Cir. 2021). *James* and *Narrigan v. Goldberg* also involved plaintiffs seeking the return of physical property that the plaintiffs had been dispossessed of. *James*, 86 F.4th at 1082; *Narrigan*, 170 F.4th 14, 20 (1st Cir. 2026).

Here, by contrast, the Woodwards are not seeking the return of physical property that they no longer have title to. Instead, the Woodwards allege plans to exercise property rights in the future by seeking a permit to drill for natural gas that the State Official will deny because of the ongoing fracturing ban.

Next, the State Officials claim that the Woodwards do not allege that they would use gelled propane hydraulic fracturing or CO-2-based fracturing "but for the statutory restrictions" but the Complaint belies that. State Official MTD 11. The Woodwards alleged that "[b]ut for New York's comprehensive ban" they would lease to interested operators. FAC ¶ 71. They allege that the "comprehensive ban" includes CO2 fracturing. FAC ¶ 71. Thus, the Woodwards sufficiently alleged ongoing future injury in the complaint (supported with declarations attached hereto) stemming from

the ban's application to these technologies.[6] *See* Decl. of Thomas Woodward Supp. Pls.' Opp. to Defs.' Mot to Dismiss ¶¶ 8-14; Decl. of Madison Woodward III Supp. Pls.' Opp. to Defs.' Mot to Dismiss ¶¶ 8-14. As a result, they have standing to challenge those bans too.

**E. The ongoing violation of federal law shows that the Woodwards' claims are timely.**

The ongoing nature of the Woodwards' injury shows that their claims remain timely. A claim is timely if it seeks declaratory and injunctive relief to remedy ongoing violations of federal law. *Wallace v. New York*, 40 F.Supp.3d 278, 302 (E.D.N.Y. 2014); *Amerada Hess Corp. v. Acampora*, 486 N.Y.S.2d 38 (N.Y. App. Div. 1985); *see also Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995).

Here, as demonstrated above, the injury is ongoing because the Woodwards cannot apply for a drilling permit because the fracturing ban prevents the government from issuing such a permit. *Cf. Cedar Point*, 594 U.S. at 145; *Sanchez*, 173 F.4th at 1219 (holding that ongoing enforcement of state supreme court decision was an "'ongoing injury'" (quotation omitted)).

*Pino* indicates that this type of ongoing injury is timely. There, the Second Circuit

---

[6] The State Officials say in a footnote that the Woodwards "failed to state any claim" regarding the gelled propane hydraulic fracturing and CO2 fracturing bans because any just compensation would be "'nil.'" State Official Br. 11 n.8. (quoting *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 240 & n.11 (2003)). The facts surrounding the amount of just compensation for the lost opportunity to obtain a lease fee from an operator who wants to experiment to make these technologies commercially practicable should not be decided at the motion to dismiss stage. *Tyler*, 598 U.S. at 637 (holding that it "is enough" at pleadings stage for takings plaintiff to "plausibly plead[] on the face of [the] complaint that [they] suffered" harm).

held that a prisoner's Section 1983 claim was untimely because it had been filed more than five years since his bodily injuries at the state prison and the limitations period was three years. 49 F.3d at 52. The court noted that "plaintiff has alleged no facts indicating a continuous or ongoing violation of his constitutional rights." *Id.* But, here, the Woodwards allege an ongoing violation of constitutional rights.

As the Eastern District of New York has explained, the Second Circuit has "not expressly rejected" the ongoing violation "accrual exception" and "several other Circuits" recognize it. *Wallace v. New York*, 40 F. Supp. 3d 278, 302 (E.D.N.Y. 2014). *Wallace* described it as "the clock on any challenge to the constitutionality of a statute, whose continued application works an ongoing constitutional violation, starts to run anew, every day that the statute applies." *Id. Wallace* noted that the "exception embraces the idea that 'continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations.'" *Id.* (quoting *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989)). State courts have also applied this principle to restrictions that deny the use of property in the context of declaratory judgment actions. *Amerada Hess Corp. v. Acampora*, 486 N.Y.S. 2d 38, 41 (1985); *see also Breland v. City of Fairhope*, 229 So. 3d 1078, 1086 (Ala. 2016) (similar).[7]

While the State Officials may protest that this means a takings challenge seeking prospective relief against a restriction on the use of property can occur at any time,

[7] By relying on the ongoing violation exception, the Woodwards do not rely on the similar but distinct continuing violation doctrine, which instead focuses on using one act within the limitations period to collect damages for acts occurring outside the limitations period, such as in the hostile work environment context.

that is no different than ongoing restrictions on any other constitutional right. This complies with *Knick*'s admonition to treat takings claims the "same as other claims under the Bill of Rights." 588 U.S. at 202. This outcome also flows from the fact that a property owner can apply for a permit to use their property at any time. It would be fundamentally unfair to force owners to decide for all time how they wanted to use their property in 2020 when the State passed the statutory ban on high-volume hydraulic fracturing. Additionally, the statute of limitations still applies to retrospective damages, so it would not mean that the government would face massive financial liabilities. *See Breland*, 229 So.3d at 1088.

**1. *The State Officials' cases finding takings claims time-barred are distinguishable***

The cases the State Officials cite are inapposite for at least two reasons. State Official MTD 6. *First,* they did not involve claims for prospective relief to stop ongoing violations of federal law. The trucking company in *Kuhnle Brothers, Inc. v. County of Geauga* only sought retrospective "monetary damages" for having to use longer truck routes. 103 F.3d 516, 519 (6th Cir. 1997). And the mobile home park owner in *Levald, Inc. v. City of Palm Desert* sought declaratory relief but did not challenge the law's ongoing enforcement. 998 F.2d 680, 688 (9th Cir. 1993). The court viewed the claim as just "'creative labelling'" of a claim for damages. *Id.* (quoting *Gilbert v. City of Cambridge*, 932 F.2d 51, 57–58 (1st Cir. 1991)). The unpublished *EklecCo NewCo LLC v. Town of Clarkstown* likewise held that the declaratory relief sought was just "'draping [a] claim in the raiment of the Declaratory Judgment Act.'" No. 16-CV-6492, 2018 WL 3023159, at *8 n.5 (S.D.N.Y. June 18, 2018).

*Second*, and relatedly, the State Officials' cited cases dealt with facial claims and not as-applied claims as the Woodwards allege here. A facial claim only looks at whether "'*the mere enactment of the statutes and regulations constitutes a taking.*'" *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 493 (1987). And whether there are "'no set of circumstances exists under which the [challenged] Act would be valid.'" *74 Pinehurst LLC*, 59 F.4th at 562 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). An as-applied claim, by contrast, looks at the "actual effects" and the "particular impact" of the challenged regulation "on a specific piece of property." *Keystone Bituminous Coal Ass'n*, 480 U.S. at 493-94.

Here, the gravamen of the Woodwards' complaint presents an as-applied challenge to the fracturing ban's ongoing roadblock to them successfully applying for a drilling permit for their specific property. FAC ¶¶ 47-60, 63, 65-68; *see id.* ¶ A (praying for "as-applied" relief). While the complaint also asks that the statute be declared unconstitutional on its face, the Woodwards asked for that to preserve the Court's ability to award broader relief where appropriate. *See Christian v. James*, 176 F.4th 189, 204 n.6 (2d Cir. 2026). The State Officials also seem to acknowledge that the Woodwards' claims are as-applied. *See* State Official MTD 21 ("Plaintiffs' claim does not extend beyond their own mineral estate.").

Thus, the statute of limitations cases that the State Officials cite present takings claims that are fundamentally different than the Woodwards' claims. Because the Woodwards allege ongoing violations of their federal Constitutional right to seek a permit in the present and the future, their claims are timely.

**2. *The Woodwards' claims satisfy the futility exception to ripeness***

To be sure, the State Officials may counter that an as-applied challenge is not ripe because the Woodwards have not applied for a permit, but the futility exception applies here. A takings claim is ripe for judicial review "once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001). This is a "relatively modest" requirement and "nothing more than *de facto* finality is necessary." *Pakdel v. City & Cnty. of S.F.*, 594 U.S. 474, 478–79 (2021).

Here, the challenged law states: "No permits shall be issued" for high-volume hydraulic fracturing and carbon dioxide fracturing. N.Y. Env't Conserv. Law (ECL) § 23-0501(3)(a). It also states that: "[t]here shall be a moratorium on the department taking actions on applications" for gelled propane hydraulic fracturing. § 23-0501(3)(b). Facing this statutory language, the Woodwards do not need to apply because doing so would be "futile." *Murphy v. New Milford Zoning Comm'n.*, 402 F.3d 342, 349 (2d Cir. 2005).

**3. *Alternatively, the Woodwards can at a minimum challenge the bans on gelled propane hydraulic fracturing and CO2 fracturing***

Even if the court analyzed the Woodwards' claim regarding the high-volume hydraulic fracturing technology as accruing in 2020, their challenge to the carbon dioxide ban falls within New York's three-year statute of limitations. That ban was passed on December 21, 2024, and the Woodwards filed this action on April 16, 2026. As the Defendant state officials note, high-volume hydraulic fracturing, gelled

propane hydraulic fracturing, and carbon dioxide fracturing are technologies that are "distinct from one another." State Official MTD 8.

Next, New York initially presented the gelled propane hydraulic fracturing ban as a "moratorium" until a study was completed. ECL § 23-0501(3)(b). Thus, the Woodwards would have had no way of knowing in 2020 that the moratorium would slowly morph into a de facto ban. Only on December 21, 2024, when New York also banned CO2 fracturing and a study on gelled propane fracturing was still not forthcoming, could one start to suspect that New York was seeking not to simply regulate Marcellus and Utica fracturing—but to ban it completely. The Supreme Court expects property owners to allow the regulatory process some time to play out before takings liability attaches. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 335 (2002). As such, December 21, 2024, is within three years, and the Woodwards can also challenge the gelled propane hydraulic fracturing ban.

**CONCLUSION**

The State Officials' motion to dismiss should be denied.

Dated: August 7, 2026.

Respectfully submitted,

*<u>/s/ David McDonald</u>*
David McDonald, NY Bar No. 5539424
Jeffrey D. Jennings, VA Bar No. 87667*
Tyler Fry, TX Bar No. 24136831*
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd, Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
Email: DMcDonald@pacificlegal.org
JJennings@pacificlegal.org
TFry@pacificlegal.org

* *Mailing address only. Pro hac vice.*