**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS WOODWARD, and MADISON WOODWARD III,<br><br>Plaintiffs,<br>v.<br><br>AMANDA LEFTON, in her official capacity as Commissioner of the New York Department of Environmental Conservation; CATHERINE DICKERT, in her official capacity as Director of the New York Department of Environmental Conservation's Division of Mineral Resources; and LETITIA JAMES, in her official capacity as Attorney General of the State of New York, and KATHY HOCHUL, in her official capacity as Governor of the State of New York,<br><br>Defendants. | Civil Action No.: 3:26-cv-00736-AJB-CBF<br><br>**DECLARATION OF THOMAS WOODWARD IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Pursuant to 28 U.S.C. § 1746, Thomas Woodward, declares as follows:

1. I am over eighteen years of age and am competent to testify in court should I be called to testify.

2. I am a plaintiff in the above-captioned case along with my father Madison Woodward III.

3. In 2011, my father and myself bought a property near Sidney, New York, in Delaware County based on its natural gas potential.

4. In 2019, we sold the surface of the property but retained the mineral rights. Those mineral rights are the subject of this lawsuit.

5. My father and myself hope to use the minerals for natural gas exploration and extraction. We would like to lease the property to natural gas producers (operators) so that they could then explore the property for natural gas and start producing it after obtaining any needed permits.

6. It's my understanding that the only commercially practicable way to profitably extract natural gas from my mineral estate would be to use high-volume hydraulic fracturing that uses more than 300,000 gallons of water to complete the well.

7. Gelled propane hydraulic fracturing and carbon dioxide fracturing are newer experimental fracturing techniques when it comes to the types of shale rock in the Marcellus and Utica shale formations.

8. It's my understanding that New York state law requires those hoping to drill natural gas wells to first obtain a permit from the New York Department of Environmental Conservation. It's my understanding that drilling without a permit risks civil and criminal liability.

9. It's my understanding that New York state law bans the New York Department of Environmental Conservation and state officials from issuing permits for gas drilling that uses either high-volume hydraulic fracturing that uses 300,000 gallons of water or more to complete the well, gelled propane hydraulic fracturing, or carbon dioxide fracturing.

10. Thus, no reasonable operator would want to lease my minerals given that they must obtain a permit to drill and state law bans the issuance of permits for

high-volume hydraulic fracturing, gelled propane hydraulic fracturing, and carbon dioxide fracturing. It would be a waste of an operator's resources to invest the time and money into researching my property, negotiating a lease with me, and potentially paying me a lease bonus only for them to face these regulatory roadblocks.

11. But for New York's ban on drilling without a permit, and its ban on issuing permits for using high-volume hydraulic fracturing, I would lease my minerals to an operator for them to use the minerals to produce natural gas by using high-volume hydraulic fracturing.

12. But for New York's ban on drilling without a permit, and its ban on issuing permits for using gelled propane hydraulic fracturing, I would lease my minerals to an operator for them to experiment with gelled propane hydraulic fracturing techniques. Even if they failed to make the technology commercially practicable for gas extraction in my property's location, I would probably at least get paid a lease bonus for giving them the opportunity to experiment.

13. But for New York's ban on drilling without a permit, and its ban on issuing permits for using carbon dioxide fracturing, I would lease my minerals to an operator for them to experiment with carbon dioxide fracturing techniques. Even if they failed to make the technology commercially practicable for gas extraction in my property's location, I would probably at least get paid a lease bonus for giving them the opportunity to experiment.

14. But for New York's ban on drilling without a permit, and its ban on issuing permits for high-volume hydraulic fracturing, gelled propane hydraulic fracturing, and carbon dioxide fracturing, my father and myself, would make it known to operators that we are ready, willing, and able to start negotiating a lease of our minerals to produce natural gas with any of these three technologies. If the Court were to enjoin the fracturing ban's application to our mineral estate, we would contact a lease broker to let them know that our minerals are available for fracturing and leasing. We would also contact operators in nearby Pennsylvania to let them know that we are interested in negotiating a lease of our minerals.

15. I believe that producing natural gas with my minerals would benefit me, my family, and all of society by creating energy affordability and abundance.

16. To the best of my knowledge, there are no other minerals on the property (besides the possible natural gas resources) that are commercially practicable to extract.

17. New York has not paid me any compensation for preventing me from using my mineral estate.

Executed on: August 6__, 2026

T. Madison Woodward

Thomas Woodward