**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS WOODWARD, and<br>MADISON WOODWARD III,<br><br>Plaintiffs,<br>v.<br><br>AMANDA LEFTON, in her official capacity as Commissioner of the New York Department of Environmental Conservation; CATHERINE DICKERT, in her official capacity as Director of the New York Department of Environmental Conservation's Division of Mineral Resources; and LETITIA JAMES, in her official capacity as Attorney General of the State of New York, and KATHY HOCHUL, in her official capacity as Governor of the State of New York,<br><br>Defendants. | Civil Action No.:<br>3:26-cv-00736-AJB-CBF<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE** |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. Applicants Lack a Direct, Substantial, and Legally Protectable Interest in the Subject Matter of This Case ..... 3

A. Public nuisance doctrine principles demonstrate that the Applicants' general environmental interests are insufficient ..... 4

B. General political advocacy is an insufficient interest for intervention ..... 6

1. The Applicants' cited cases are distinguishable ..... 8

II. A Disposition in the Woodwards' Favor Will Not Impair Whatever Interest the Applicants Allegedly Have ..... 11

III. The State of New York Adequately Represents the Applicants' Interests ..... 12

A. The State Officials have demonstrated their willingness to defend the challenged law ..... 13

B. The State has the capacity to defend its interests and the Applicants' interests ..... 15

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
750 N.E.2d 1097 (N.Y. 2001)........................................................................ 5

*335-7 LLC v. City of New York*,
No. 20-CV-1053 (ER), 2020 WL 3100085 (S.D.N.Y. June 11, 2020)...................... 9

*Association of Connecticut Lobbyists LLC v. Garfield*,
241 F.R.D. 100 (D. Conn. 2007) .................................................................. 10

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
451 N.E.2d 459 (N.Y. 1983)......................................................................... 4

*Catanzano by Catanzano v. Wing*,
103 F.3d 223 (2d Cir. 1996)...................................................................... 1-2

*Commack Self-Service Kosher Meats, Inc. v. Rubin*,
170 F.R.D. 93 (E.D.N.Y. 1996) .................................................................. 10

*Davies v. S.A. Dunn & Co., LLC*,
156 N.Y.S.3d 457 (N.Y. App. Div. 3d Dept. 2021)............................................. 4-5

*Entergy Nuclear Vermont Yankee, LLC v. Shumlin*,
No. 1:11-cv-99-JGM, 2011 WL 2173785 (D. Vt. June 2, 2011) .............................. 7

*Floyd v. City of New York*,
770 F.3d 1051 (2d Cir. 2014)..................................................................... 2-4

*Great Atl. & Pac. Tea Co., v. Town of E. Hampton*,
178 F.R.D. 39 (E.D.N.Y. 1998) ..........................................................*passim*

*Green Mountain Chrysler Plymouth Dodge Jeep v. Torti*,
No. 2:05-CV-302, 2006 WL 8567240 (D. Vt. May 3, 2006)................................... 10

*Grocery Mfrs. Ass'n v. Sorrell*,
No. 5:14–cv–117, 2014 WL 12644264 (D. Vt. Oct. 7, 2014) ......................... 2, 6, 15

*Herdman v. Town of Angelica*,
163 F.R.D. 180 (W.D.N.Y. 1995) ............................................................ 10, 11, 13

*Human Services Council of New York v. City of New York*,
No. 21 Civ. 11149 (PGG), 2022 WL 4585815
(S.D.N.Y. Sep. 29, 2022) ........ 9

*Louisiana v. Burgum*,
132 F.4th 918 (5th Cir. 2025) ........ 2

*Lucas v. S.C. Coastal Council*,
505 U.S. 1003 (1992) ........ 17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 12

*Nat. Res. Def. Council, Inc. v. New York State Dep't of Env't Conservation*,
834 F.2d 60 (2d Cir. 1987) ........ 15-16

*New York Public Interest Research Group, Inc. v. Regents of University of State of New York*
516 F.2d 350 (2d Cir. 1975) ........ 8

*Northland Fam. Plan. Clinic, Inc. v. Cox*,
487 F.3d 323 (6th Cir. 2007) ........ 3, 6-7

*N. Dakota ex rel. Stenehjem v. United States*,
787 F.3d 918 (8th Cir. 2015) ........ 3

*U.S. Postal Serv. v. Brennan*,
579 F.2d 188 (2d Cir. 1978) ........ 12-13

*U.S. v. City of New York*,
198 F.3d 360 (2d Cir. 1999) ........ 2-3

*United States v. New York City Hous. Auth.*,
326 F.R.D. 411 (S.D.N.Y. 2018) ........ 2, 11, 13, 19

*United States v. Yonkers Bd. of Educ.*,
902 F.2d 213 (2d Cir. 1990) ........ 14

**Rules**

Fed. R. Civ. P. 24 ........ 1

Fed. R. Civ. P. 24(a)(1) ........ 1

Fed. R. Civ. P. 24(a)(2) ........ 1-2

Fed. R. Civ. P. 24(b)(1)(A) ........ 1

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................................... 1

Fed. R. Civ. P. 24(b)(2) .......................................................................................... 2

**Other Authorities**

Environmental Conservation, *High-Volume Hydraulic Fracturing in NYS*, https://tinyurl.com/2za9hr88 (last visited Aug. 5, 2026) ............................... 7

*Hochul defends fracking ban as Blakeman presses for it to be overturned*, Spectrum Local News (June 12, 2026), https://tinyurl.com/yb8vxkbs ........................................................................... 14

New York State Department of Budget, *Law, Department of – Budget Highlights* (Jan. 20, 2026), https://tinyurl.com/4dttv3kd ..................................... 15

Restatements, Torts 2d, § 821C, cmt. *b* ........................................................... 4

## INTRODUCTION

Catskill Mountainkeeper, Food & Water Watch, and Delaware Riverkeeper Network's (collectively "Applicants") motion for permissive intervention should be denied. They have failed to show that they possess sufficient cognizable interests that would be impaired by the Court ruling in favor of Plaintiffs Thomas Woodward and Madison Woodward III. Further, whatever minor or non-particularized interests Applicants may possess are more than adequately represented by a powerful state government committed to defending the statute challenged here.

Under Federal Rule of Civil Procedure 24, a third party may intervene in a suit when the third party either "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest," Fed. R. Civ. P. 24(a)(2), or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).[1]

In order to justify intervention as of right, an applicant must show 1) that its intervention is timely, 2) that the applicant has a direct, substantial, legally protectable interest in the subject of the action, 3) that disposing of the action may as a practical matter impair or impede the applicant's ability to protect this interest, and 4) that existing parties do not already adequately represent the applicant's interest. *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996). Failure

[1] While not at issue here, intervention can also be made explicitly available via statute. Fed. R. Civ. P. 24(a)(1), (b)(1)(A).

to satisfy even one of the four requirements is sufficient to deny the motion. *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014).

For permissive intervention, courts look to the same four factors, though approaching the question with a greater degree of discretion. *See Catanzano*, 103 F.3d at 234 ("The district court has broad discretion to deny an applicant's motion for intervention under Rule 24(b)(2) [governing permissive intervention by a government agency or officer]."). *See Grocery Mfrs. Ass'n v. Sorrell*, No. 5:14–cv–117, 2014 WL 12644264 at *4 (D. Vt. Oct. 7, 2014) ("The court considers substantially the same factors whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ. P. 24(b)(2)."); *United States v. New York City Hous. Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018).

Permissive intervention may be denied even when the requirements for permissive intervention are satisfied, if the court, in its discretion, determines that intervention would unduly prejudice one of the parties. *See Louisiana v. Burgum*, 132 F.4th 918, 923 (5th Cir. 2025). Further, while the adequacy of representation requirement is generally "treated as minimal" in the context of permissive intervention, when the government is a party and acting in its sovereign capacity, "[t]he proponent of intervention must make a particularly strong showing of inadequacy." *U.S. v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999). Applicants here fail to satisfy three of the four requirements for intervention, and their motion must therefore be denied.

## ARGUMENT

While the Woodwards do not contest the timeliness of Applicants' motion, it must nevertheless be denied. Applicants have failed to show that they possess a "'direct, substantial, and legally protectable' interest in the subject matter of the action" that would be impaired by a victory for the Woodwards. *Id.* at 365. Applicants have also failed to demonstrate why the State of New York is unable to adequately protect any such interests in this litigation.

### I. Applicants Lack a Direct, Substantial, and Legally Protectable Interest in the Subject Matter of This Case

Courts consider whether a party trying to intervene has a "direct, substantial, and legally protectable" interest in the subject of this action that would justify intervention. *Floyd*, 770 F.3d 1051; *see also N. Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918 (8th Cir. 2015); *Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 345-46 (6th Cir. 2007). The "legally protectable interest" must be "sufficient to grant them the benefits and burdens of status as a party." *Floyd*, 770 F.3d at 1060. And interests "'contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule.'" *Id.* (quotation omitted).

Applicants who do not have a legally protectable interest are not entitled to intervention as of right. *Id.* at 1054. In *Floyd*, a police union tried to intervene in a lawsuit challenging New York City's "'stop-and-frisk'" policy. *Id.* It claimed that the policy's legality impacted its members' reputations because the lawsuit accused several police officers of violating the Constitution. *Id.* at 1061. The court held that the police union could not intervene partly because it did "not assert an interest that

the law seeks to protect." *Id.* at 1062. It reasoned that they hadn't shown "that the union members' careers had been tarnished, that their safety was in jeopardy, or that they had been adversely affected in any tangible way." *Id.* at 1061. And it concluded that "indirect reputational effect on individual police officers is too 'remote from the subject matter of the proceeding' to be legally protectable." *Id.*

Here, Applicants do not have a legally protectable interest. This case concerns a regulation violating the Takings Clause as to one specific 164-acre property in New York and the government failing to pay just compensation. As the Woodwards' explained in their opposition to the State Officials' motion to dismiss, the gravamen of their complaint is an as-applied challenge. Pls.' Mem. of Law in Opp. to Mot. to Dismiss. 22, Dkt. No. 39-1. They do not seek a statewide injunction against the fracturing ban. Any general environmental and aesthetic concerns that the Applicants raise regarding fracturing are too remote from this case's focus on the Woodwards' property.

### A. Public nuisance doctrine principles demonstrate that the Applicants' general environmental interests are insufficient

Indeed, the Applicants would lack a public nuisance claim, which drives home their lack of a legally protectable interest in this case. New York state law prevents members of the public from suing to abate a public nuisance, unless they show that they suffered a harm that is "'of a different kind from that suffered by other persons exercising the same public right.'" *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 468 (N.Y. 1983) (quoting Restatements, Torts 2d, § 821C, cmt. *b*); *see also Davies v. S.A. Dunn & Co., LLC*, 156 N.Y.S.3d 457, 461 (N.Y. App.

Div. 3d Dept. 2021). Otherwise, "'invasions of rights common to all of the public should be left to be remedied by action by public officials.'" *Id.*; *see also 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1104 (N.Y. 2001) ("This principle recognizes the necessity of guarding against the multiplicity of lawsuits that would follow if everyone were permitted to seek redress for a wrong common to the public.")

The Applicants' claimed interests mirror the attenuated interests at issue in *Davies.* There, members of the public sued to abate odors emanating from a landfill. *Davies*, 156 N.Y.S.3d at 459-60. The court held that they did not have standing to bring a public nuisance claim because they "did not assert a special injury." *Id.* at 461. It explained that a member of the public can sue for a public nuisance only if they sustained an injury that is "'different in kind, not merely in degree.'" *Id.* The court the noted that "[t]here is no dispute that noxious odors emanating from the landfill may qualify as a public nuisance insofar as they interfere with a common right of the public to clean and fresh air." *Id.* But the court reasoned that the public is defined not as the broad community but is instead "other homeowners and renters impacted by the landfill's odors." *Id.* at 463. Under that definition, the members of the public lacked standing because the lower property values they suffered from living near the landfill "is essentially the same for all of the residents in the nearby vicinity of the landfill – i.e., the community at large." *Id.* at 464. The court concluded that "we are not minimizing the significance of plaintiffs' complaint as to the impact of noxious odors on a property owner's ability to use and enjoy his or her property,

but conclude that the available remedy must be through effective governmental compliance and enforcement measures." *Id.* at 465.

Here, none of the Applicants' members would suffer harm that is any different than other members of the public who might live near the Woodwards' desired fracturing activities. What's more, the Applicants' declarations focus on their fight against pollution at a broad society level and on aesthetic and recreational harms that all members of the public would allegedly suffer from fracturing. Several of the declarants also mention fracturing's potential impact on climate change, but climate change potentially impacts the entire world. These types of generalized injuries would not satisfy New York's rules for members of the public to sue for a public nuisance. The Applicants' appropriate remedy must be through trusting the State Officials to defend the fracturing ban and to continue enforcing it.

**B. General political advocacy is an insufficient interest for intervention**

Really, the Applicants' interests in this case boil down to broader political advocacy. Several courts, however, have held that this type of advocacy, standing alone, is inadequate to support intervention. In *Cox*, the Sixth Circuit reasoned that: "[T]he public at large—including public interest groups—has an interest in the procedure by which a given legal requirement is enacted as a matter of democratic legislative process." *Cox*, 487 F.3d at 345-46. Conversely, the court noted that for the "constitutionality of an already-enacted statute, as opposed to the process by which it is enacted, the public interest in its enforceability is entrusted for the most part to the government." *Cox*, 487 F.3d at 345-46; *see also, e.g., Grocery Mfrs. Ass'n*, 2014 WL

12644264, at *4 (citing *Cox* in denying intervention to organizations who advocated for the enactment of the challenged statute); *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, No. 1:11-cv-99-JGM, 2011 WL 2173785, at *2-3 (D. Vt. June 2, 2011) (holding that the applicants' interest was "essentially an interest in the ultimate enforcement of Vermont's statutory and regulatory scheme," which the applicants shared with both the state defendant and practically all citizens of the state).

In describing their interest in this action here, Applicants rely primarily on their role in advocating for the enactment of New York's fracking ban. *See generally*, Proposed Intervenor-Defendants' Memorandum of Law in Support of Motion to Dismiss, Dkt. No. 28-7. This advocacy represents no special interest in this litigation that is not shared by tens of thousands of other New Yorkers. Over 260,000 public comments were filed in the run-up to New York's Department of Environmental Conservation decision to stop issuing fracturing permits.[2] To the extent Applicants possess a cognizable interest, they share it with more than a quarter of a million people. And any general interest in the State's environmental quality is shared even more widely. In cases such as this, where the applicants' purported interests are essentially fully generalizable to the entire population, courts presume that the State acting as *parens patriae* best represents those interests. *See Cox*, 487 F.3d at 345 ("[I]n a challenge to the constitutionality of an already-enacted statute, as opposed to the process by which it is enacted, the public interest in its enforceability is entrusted

---

[2] *See* New York Department of Environmental Conservation, *High-Volume Hydraulic Fracturing in NYS*, https://tinyurl.com/2za9hr88 (last visited Aug. 5, 2026).

for the most part to the government, and the public's legal interest in the legislative process becomes less relevant.").

**1. *The Applicants' cited cases are distinguishable***

The cases cited by the Applicants are inapposite because the intervenors in those cases had stronger interests than a mere history of advocacy on adjacent policy issues. Mem. Of Law in Support of Mot. to Intervene 11-12, Dkt. No. 28-1.

In *New York Public Interest Research Group, Inc. v. Regents of University of State of New York* (NYPIRG), the court held that pharmacists' "economic interests" in defending a regulation prohibiting advertising prescription drug prices showed they could intervene as of right. 516 F.2d 350, 352 (2d Cir. 1975). The court reasoned that the "lifting of the prohibition against advertising prescription drug prices might well lead to significant changes in the profession and in the way pharmacists conduct their businesses." *Id.*

But here, the Applicants do not have any economic interests in defending the regulation. They are not a narrow group of professionals facing the restructuring of their entire industry and they have not shown that their livelihoods would face significant changes if the Woodwards can drill for gas on their single parcel. Unlike the statewide injunction at issue in *NYPIRG*, the gravamen of the Woodwards' complaint is as-applied relief.[3]

---

[3] While the Applicants mention that some of their members own businesses that "rely on a clean river ecosystem," a broad concern for the entire "ecosystem" amounts to a generic concern for the environment. Dkt No. 28-4, at 4. It falls short of the particularized economic interest at issue in *NYPIRG*.

Similarly, the union in the unpublished *Human Services Council of New York v. City of New York* case did more than simply advocate for the public contracting law that it intervened to defend from city contractors' broad facial challenge. No. 21 Civ. 11149 (PGG), 2022 WL 4585815, at *4 (S.D.N.Y. Sep. 29, 2022). It was also actively involved "in negotiating labor peace agreements with human services employers who contract with the City" based on the law's new requirements that city contractors enter collective bargaining agreements with unions where unions seek to represent their employees. *Id.* at *1, 4. Thus, the union stood to lose bargaining power with city contractors if the law was struck down. *Id.* at *4. By contrast, the Applicants cannot point to any economic harm of that magnitude should fracturing occur on the Woodwards' single parcel.

Likewise, the unpublished *335-7 LLC v. City of New York* case involved a tenant rights group intervening to defend a rent control law against a facial and as-applied attack on the law. No. 20-CV-1053 (ER), 2020 WL 3100085, at *3 (S.D.N.Y. June 11, 2020). The court held that the tenant rights group could intervene because they represented "tenants directly impacted by the" rent control law. *Id.* at *3. As the landlords challenging the law conceded, the tenants were the "intended beneficiaries" of the law. *Id.* But here, the environmental, health, and aesthetic concerns that the Applicants raise implicate broad issues that impact all of society and not a narrow special interest, such as tenants in living in rent-controlled apartments. And the gravamen of the Woodwards' complaint is an as-applied challenge and not a facial one.

The lobbying groups in *Association of Connecticut Lobbyists LLC v. Garfield* also did more than mere political advocacy. The claims in the suit directly impacted the ways they were permitted to do their jobs. 241 F.R.D. 100, 103 (D. Conn. 2007). Applicants here, by contrast, do not raise any basis for their interest in this litigation beyond their advocacy work pushing for the challenged statute's enactment. The organization in *Commack Self-Service Kosher Meats, Inc. v. Rubin* represented kosher-eating members whose access to kosher food was directly implicated by the suit. 170 F.R.D. 93, 102 (E.D.N.Y. 1996).

While the unpublished *Green Mountain Chrysler Plymouth Dodge Jeep v. Torti* allowed an environmental group to intervene based on advocating for vehicle emission regulations, that case involved a broad facial attack on the law and this case focuses on the Woodwards' property. No. 2:05-CV-302, 2006 WL 8567240, at *4 (D. Vt. May 3, 2006). That case also involved the State actively "support[ing]" intervention, but here, the Defendant state officials merely consent to it. *Id.* The court reasoned that this suggested that the "that Applicants may be able to advocate for aspects of the case that are outside the State's purview, or beyond its area of expertise." *Id.* at *5. By contrast, the Defendant state officials in this case have given no indication that they need outside support.

*Herdman v. Town of Angelica* is likewise distinguishable. 163 F.R.D. 180, 187 (W.D.N.Y. 1995). There, the environmental group allowed to intervene had done more than mere political advocacy. It had "participated as a party" in the permitting process for the solid waste disposal facility that a challenged ordinance had banned.

*Id.* And the court emphasized that the group had "ha[d] a legitimate interest in placing before this court its argument that [the] constitutional claims are not ripe for adjudication because the administrative process, in which [the group] is a party intervenor, is not yet complete." *Id.* at 187. Thus, the group was an active party in collateral legal proceedings, which distinguishes them from the Applicants here who merely pushed the law in the political arena.

At bottom, organizations with strong opinions on the desirability and constitutionality of a particular government action who believe they can provide valuable insight into the legal questions at issue are free to submit amicus briefs, advocate in legislatures and the court of public opinion, and initiate their own legal challenges when appropriate, but participation as a full party requires something more direct and substantial.

**II. A Disposition in the Woodwards' Favor Will Not Impair Whatever Interest the Applicants Allegedly Have**

Even if the Court assumes that the Applicants possess a significant legally protectable interest in the subject matter of this action, this case's outcome will not substantially impair or impede Applicants' ability to protect that interest. Lacking a particularized stake in the suit, Applicants claim an interest based on their organizational missions to protect New York's natural environment. But "[e]ven assuming [Applicants'] interest is cognizable, there is no suggestion that the disposition of *this* action would impair—as a practical matter—[Applicants'] ability to protect that interest through advocacy, education, or litigation." *New York Hous. Auth.*, 326 F.R.D. at 416. Should the Woodwards prevail, Applicants will retain the

ability to administratively or legally challenge particular projects if they should violate any environmental laws, to advocate for environmental legislation or constitutional amendments, or to educate the populace about the alleged dangers of certain fracturing techniques. A declaration that preventing the Woodwards from applying for a drilling permit violates the Takings Clause given their unique circumstances and an injunction prohibiting New York from enforcing it as to a 164-acre parcel do not directly impair Applicants' concrete interests, and many avenues remain open to Applicants to continue furthering their broad environmental goals.

This is particularly true because the Woodwards bring an as-applied challenge to the statute. Applicants have alleged no special interest in the Woodwards' specific mineral estate or the enjoyment of the plant and wildlife thereon. *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562-63 (1992) (denying standing—a related concept—to environmental group because the group failed to allege that "one or more of [their] members would thereby be directly affected apart from their special interest in the subject.") (cleaned up). To the extent that Applicants' interests are impaired, they are impaired in an equal fashion to every other resident of the State with a passion for the environment but no connection to the property under dispute. This cannot justify Applicants' intervention.

**III. The State of New York Adequately Represents the Applicants' Interests**

Further, Applicants have failed to show how the State does not adequately represent their interests. In motions for permissive intervention, adequacy of representation is a relevant factor. *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-

92 (2d Cir. 1978); *Great Atl. & Pac. Tea Co., v. Town of E. Hampton*, 178 F.R.D. 39, 44 (E.D.N.Y. 1998). In cases where an advocacy organization and the government "share the same ultimate objective in th[e] litigation, namely, a declaration that the [law supported by the advocacy group] was validly enacted and is constitutional," adequacy of representation is presumed. *Great Atl. & Pac. Tea Co.*, 178 F.R.D. at 43, 45; *see also New York City Hous. Auth.*, 326 F.R.D. at 417 (similar); *Brennan*, 579 F.2d at 191 (While an applicant for intervention has only a minimal burden in showing inadequate representation, it "must at least overcome the presumption of adequate representation that arises when it has the same ultimate objective as a party to the existing suit.").

At least two factors determine whether representation is adequate. "(1) [W]hether the government entity has demonstrated the motivation to litigate vigorously and to present all colorable contentions, and (2) the capacity of that entity to defend its own interests and those of the prospective intervenor." *Herdman*, 163 F.R.D. at 190. Here, the Applicants cannot show either.

**A. The State Officials have demonstrated their willingness to defend the challenged law**

The State Officials defending the challenged law have given no indication whatsoever that the State lacks the will or the resources to vigorously defend Applicants' purported interests. The State has already filed a responsive pleading making almost the same arguments that the Applicants raise. Furthermore, restricting property owners' right to engage in the fracturing techniques at issue here has been a signature policy of the state government. Defendant Governor Hochul has

campaigned on the issue and doubled down on the fracking ban as recently as this summer. *See Hochul Defends Fracking Ban, Blakeman Wants It Overturned*, Spectrum News (June 12, 2026), Spectrum News Article.[4] As longtime participants in the process of lobbying for these restrictions, Applicants should know well how strong and steadfast an ally they have in this suit's Defendants. *See Great Atl. & Pac. Tea Co.*, 178 F.R.D. at 43 (reasoning that the town would adequately represent the environmentalist group's interests "in light of the cooperation between them" in passing the challenged law).

Thus, it is highly unlikely that the State will reverse course when it comes to a signature policy strongly supported by the relevant state officials and that the State has already invested more than twenty years of time and resources into. Applicants' vague concern that the State may change positions or fail to present a vigorous defense of the law at some unknown point in the future is therefore firmly insufficient to support their contention that the State does not adequately represent their interests.

Further, even if there was some basis for finding this fear credible, an applicant's disagreement with the government on matters of trial strategy is insufficient, standing alone, to support intervention. *See United States v. Yonkers Bd. of Educ.*, 902 F.2d 213, 218 (2d Cir. 1990) ("If disagreement with an actual party over trial strategy, including over whether to challenge or appeal a court order, were sufficient basis for a proposed intervenor to claim that its interests were not adequately

---

[4] https://tinyurl.com/yb8vxkbs.

represented, the requirement would be rendered meaningless."); *Nat. Res. Def. Council, Inc. v. New York State Dep't of Env't Conservation*, 834 F.2d 60, 61-62 (2d Cir. 1987). ("[So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions," as the State Defendants have in this case, "[a] putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party.").

Equally unlikely is the possibility that New York lacks the capacity to defend its and Applicants' interests. New York is a wealthy state, with an annual budget of more than $132 billion. The State's Department of Law, responsible for "protecting the legal rights of New York State and its citizens by representing the State in litigation and in other legal affairs," had a budget of nearly $400,000 dedicated to state programs in fiscal year 2026.[5] Given these massive budgets, and in the absence of any contrary allegations from Applicants, it is implausible that the State will lack the resources to vigorously defend its fracking ban anytime soon. *See Grocery Mfrs. Ass'n*, 2014 WL 12644264, at *6 (holding that representation was adequate absent "that the State Defendants lack the incentive, the ability, or the financial resources to defend Act 120").

**B. The State has the capacity to defend its interests and the Applicants' interests**

---

[5] New York State Department of Budget, *Law, Department of – Budget Highlights* (Jan. 20, 2026), https://tinyurl.com/4dttv3kd.

"To prevail on its theory of inadequate representation, the [Applicants] would need to demonstrate that [they] ha[ve] a legal interest in maintaining the [fracturing ban] that not only differs from the [State's] interest, but would permit the [Applicants] to assert a justification for the law that could not be equally asserted by the [State]." *Great Atl. & Pac. Tea Co., Inc.*, 178 F.R.D. at 43; *Nat. Res. Def. Council*, 834 F.2d at 62.

The Applicants find themselves similarly situated to the putative intervenors in *Natural Resources Defense Council, Inc.*, 834 F.2d at 61. There, an oil industry group sought to intervene in a Clean Air Act citizen suit that environmentalists brought against state and federal agencies to compel a state to revise its "ozone and carbon monoxide pollution control strategies." *Id.* at 61. The oil industry group contended that it had members who owned or supplied "some 3500 gasoline stations in New York City." *Id.* It wished to contest "whether EPA has a nondiscretionary duty to compel New York to revise its pollution control strategies." *Id.*

The Second Circuit held that intervention was inappropriate because "there has been no showing that the nature of [the oil industry group's] economic interests is related to colorable legal defenses that the public defendants would be less able to assert." *Id.* at 62. The court explained that "[a] putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party." *Id.* at 61-62.

So too here. The environmental and aesthetic interests that the Applicants advance are interests that the State's defenses will incorporate. Indeed, Applicants'

proposed motion to dismiss hews extraordinarily closely to the motion the Defendant State Officials filed on the same day. *See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss, Dkt. No. 32-1. Moreover, the Applicants' motion to intervene mentions fracturing as a "nuisance," but the State Officials will have the chance to raise nuisance arguments (which account for pollution concerns) in its answer and at summary judgment, given that whether a taking has occurred may be influenced by a state's "background principles of nuisance and property law." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992).[6]

The Eastern District of New York reached a similar conclusion concerning the government's ability to adequately represent an environmental group's interests. *Great Atl. & Pac. Tea Co.*, 178 F.R.D. at 41. In that case, an environmental group's members "provided extensive testimony during public hearings as well as providing commentary on area planning statements relevant to" a law banning retail stores above a certain size within a town. *Id.* The environmental group then tried to intervene when a retailer challenged the town's law in federal court. *Id.* It argued that the town would not "adequately represent its interests in defending the [law] because the Group is an environmental organization whose concern is focused on protecting the environment and the rural character of the South Fork of Long Island, whereas the Town must concern itself with other interests such as perceived economic growth and stimulation of tax revenues." *Id.* at 43. The environmental group asserted

[6] The Defendant State Officials wisely did not raise this issue in their motion to dismiss given that whether gas drilling rises to the level of a nuisance turns on factual questions not appropriate for deciding at the motion to dismiss stage.

that it would "argue the environmental rationale for the [law] more vigorously than would the Town." *Id.*

The court rejected these concerns and denied intervention as of right and permissive intervention. *Id.* at 43. It explained that the group failed "to assert a justification for the law that could not be equally asserted by the Town." *Id.* It concluded that "the interests of the Group coincide with the interests of the Town in terms of the single legal issue to be determined by this lawsuit, i.e., the validity and constitutionality of the [law]." *Id.* The court noted that "[t]o the extent that the Group, by virtue of its environmental expertise, might be more persuasive than the Town in arguing the environmental justification" it could "seek amicus curiae status." *Id.* at 43-44.

That reasoning applies here too. The State's interests in the single legal issue in this case (the constitutionality of the fracturing ban as to the Woodwards) coincides with the Applicants given that the State has the option of arguing that a taking has not occurred due to nuisance principles. To the extent the Applicants have environmental expertise (something that the Woodwards do not concede), they can seek amicus curiae status or share their members as potential experts for the State's legal team to proffer at the appropriate time.

In sum, the Applicants have not shown that the powerful, motivated, and aligned State government will not adequately defend the State's and Applicants' environmental and aesthetic interests.

**CONCLUSION**

In evaluating a motion for permissive intervention, the Court's north star should be unnecessary prejudice to the existing parties. *See New York City Hous. Auth.*, 326 F.R.D. at 418. Here, despite Applicants' timely filing, any minor benefit that the Court may obtain from hearing their duplicative perspective is outweighed by the additional time and effort in doubling the number of briefs that need to be filed, as well as the additional discovery burdens on the litigants and the Court.[7]

Dated: August 7, 2026.

Respectfully submitted,

/s/ David McDonald
David McDonald
NY Bar No. 5539424
Jeffrey D. Jennings*
VA Bar No. 87667
Tyler Fry*
TX Bar No. 24136831
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd, Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
Email: DMcDonald@pacificlegal.org
JJennings@pacificlegal.org
TFry@pacificlegal.org

* *Mailing address only. Pro hac vice.*

[7] In the alternative, if the Court grants intervention, Applicants' intervention should have conditions placed on it to prevent duplicative arguments and discovery. The Court could place limits such as: "Intervenors shall not serve discovery requests that are similar to the existing Defendants' discovery requests." And: "Intervenors shall not repeat arguments in briefing that the existing Defendants have made. If they have nothing to add to an existing Defendant's argument, the Intervenors shall state that they adopt and incorporate that part of the Defendant's brief." The Court can then stagger briefing on dispositive motions so that the Applicants have time to review the existing Defendants' briefing to ascertain whether they can state that they incorporate certain portions of the existing Defendants' briefs.