UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

THOMAS WOODWARD and
MADISON WOODWARD III,

Plaintiffs,

v.

AMANDA LEFTON, in her official capacity as Commissioner of the New York Department of Environmental Conservation, et al.,

Defendants,

CIVIL ACTION NO. 3:26-cv-00736 (AJB/CBF)

**PROPOSED INTERVENOR-DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF INTERVENTION**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... III

ARGUMENT .......... 1

I. PROPOSED INTERVENORS' INTEREST IN DEFENDING LAWS THAT PROTECT THEIR MEMBERS' AND SUPPORTERS' HEALTH AND ENVIRONMENT IS SUFFICIENT FOR PERMISSIVE INTERVENTION .......... 1

A. Plaintiffs' About-Face on the Relief They Seek Does Not Deprive Proposed Intervenors of an Interest in this Case .......... 2

B. The Court Should Reject Plaintiffs' Attempt to Raise the Bar for Permissive Intervention .......... 3

C. Defending Laws that Protect an Organization's Members and Supporters Is a Well-Established Cognizable Interest for Permissive Intervention .......... 5

II. ALTHOUGH INADEQUATE REPRESENTATION IS NOT REQUIRED FOR PERMISSIVE INTERVENTION WHERE PROPOSED INTERVENORS MAKE A UNIQUE CONTRIBUTION, THERE IS A LEGITIMATE CONCERN THAT THE STATE MAY NOT ADEQUATELY REPRESENT THEIR INTERESTS .......... 8

III. INTERVENTION WOULD NOT PREJUDICE PLAINTIFFS, AND THEIR DEMAND THAT THE COURT PLACE CONDITIONS ON PROPOSED INTERVENORS' PARTICIPATION IS BASELESS .......... 10

## TABLE OF AUTHORITIES

**CASES**

**Page number(s)**

*335-7 LLC v. City of New York*,
No. 20-CV-1053, 2020 WL 3100085 (S.D.N.Y. June 11, 2020) ....................................7
*Ass'n of Conn. Lobbyists LLC v. Garfield*,
241 F.R.D. 100 (D. Conn. 2007)....................................6–7
*Baptiste v. Kennealy*,
490 F. Supp. 3d 353 (D. Mass. 2020) ....................................2
*Barry's Cut Rate Stores Inc. v. Visa, Inc.*,
No. 05-MD-1720, 2021 WL 2646349 (E.D.N.Y. June 28, 2021) ....................................9–10
*Catanzano by Catanzano v. Wing*,
103 F.3d 223 (2d Cir. 1996)....................................4
*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*,
170 F.R.D. 93 (E.D.N.Y. 1996) ....................................7, 9
*Davies v. S.A. Dunn & Co.*,
156 N.Y.S.3d 457 (3d Dep't 2021)....................................4–5
*Dow Jones & Co., Inc. v. U.S. Dep't of Justice*,
161 F.R.D. 247 (S.D.N.Y. 1995) ....................................3
*Env't Integrity Project v. Wheeler*,
No. 20-CV-1734, 2021 WL 6844257 (D.D.C. Jan. 27, 2021)....................................5
*Floyd v. City of New York*,
770 F.3d 1051 (2d Cir. 2014)....................................4
*Green v. Biden*,
No. 24-CV-1975, 2024 WL 4932751 (E.D.N.Y. Dec. 2, 2024) ....................................9
*Green Mountain Chrysler Plymouth Dodge Jeep v. Torti*,
No. 05-CV-302, 2006 WL 8567240 (D. Vt. May 3, 2006) ....................................7, 10
*Herdman v. Town of Angelica,*
163 F.R.D. 180 (W.D.N.Y. 1995)....................................7–8, 9
*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
591 U.S. 657 (2020)....................................5
*Marcelo Burlon S.R.L. v. Ailei Fashion*,
No. 19-CV-11336, 2022 WL 3925159 (S.D.N.Y. Aug. 31, 2022)....................................5
*Marriott v. Cty. of Montgomery*,
227 F.R.D. 159 (N.D.N.Y. 2005) ....................................8
*McNeill v. N.Y.C. Hous. Auth.*,
719 F. Supp. 233 (S.D.N.Y. 1989) ....................................3
*Metro. Transp. Auth. v. Duffy*,
No. 25-CV-1413, 2026 WL 588117 (S.D.N.Y. Mar. 3, 2026)....................................5
*Miller v. Silbermann*,
832 F. Supp. 663 (S.D.N.Y. 1993) ....................................3
*New York v. Reilly*,
143 F.R.D. 487 (N.D.N.Y. 1992) ....................................8
*North Dakota ex rel Stenehjem v. United States*,
787 F.3d 918 (8th Cir. 2015) ....................................4
*Northland Fam. Plan. Clinic, Inc. v. Cox*,
487 F.3d 323 (6th Cir. 2007) ....................................4
*N.Y. Pub. Interest Rsch. Grp. v. Regents of Univ. of N.Y.*,
516 F.2d 350 (2d Cir. 1975)....................................6
*United States v. N.Y.C. Hous. Auth.*,
326 F.R.D. 411 (S.D.N.Y. 2018) ....................................3, 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24(b) ....................................................................................................................3

N.Y.S. Homes & Cmty. Renewal, Office of Rent Administration 2025 Annual Report (2025), https://hcr.ny.gov/system/files/documents/2025/12/ora_2025-annual-report_final.pdf......7

## ARGUMENT

In their opposition to Proposed Intervenors' motion for permissive intervention, Plaintiffs do not dispute that Proposed Intervenors satisfy the requirements of Federal Rule of Civil Procedure 24(b); namely, that their motion is timely and that their defense shares a common question of law or fact with the main action. Instead, Plaintiffs muddy the waters, obfuscating the relief sought in their Complaint in an attempt to diminish Proposed Intervenors' interests in the case. Plaintiffs also disregard the broad standard as to what constitutes a sufficient interest for permissive intervention in an erroneous attempt to subject Proposed Intervenors to a more restrictive standard not supported by the case law.

Proposed Intervenors have shown a significant interest in this case: they spent years advocating for the laws challenged here because fracking would threaten their members' and supporters' health and destroy the natural environment many rely on for their livelihoods. And although Proposed Intervenors need not show that New York cannot adequately represent their interests, their unique perspective and the possibility that the State's position could change further counsel in favor of permissive intervention. Courts routinely grant intervention in similar circumstances and Proposed Intervenors respectfully ask the Court to do so here.

### I. PROPOSED INTERVENORS' INTEREST IN DEFENDING LAWS THAT PROTECT THEIR MEMBERS' AND SUPPORTERS' HEALTH AND ENVIRONMENT IS SUFFICIENT FOR PERMISSIVE INTERVENTION

Proposed Intervenors spent years advocating for New York's fracking prohibitions to protect their supporters' and members' health and livelihoods, and they have a strong interest in defending those protections. Plaintiffs' arguments to the contrary rely on mischaracterizing the relief sought in their First Amended Complaint and misapplying the law. Plaintiffs improperly ask the Court to impose an inapposite, higher standard for permissive intervention that requires a

"legally protectable interest" tantamount to standing, ignoring extensive precedent allowing environmental and public health groups to intervene under analogous circumstances.

### A. Plaintiffs' About-Face on the Relief They Seek Does Not Deprive Proposed Intervenors of an Interest in this Case

While Plaintiffs now state they are not bringing a facial challenge, their Complaint says otherwise. The First Amended Complaint ("Complaint") asks the Court to declare that the fracking prohibitions "on [their] face and as applied" violate the Fifth Amendment and permanently enjoin New York from enforcing them. Compl. Prayer for Relief ¶¶ A, B, Dkt. No. 9. Proposed Intervenors have shown in their proposed dismissal motion why Plaintiffs failed to state a claim for facial challenge. Proposed Mot. Dismiss at 12–13, Dkt. No. 28-7 ("Proposed MTD"). Now, in opposing intervention, Plaintiffs act as if the Complaint does not seek a statewide injunction and a declaration that the fracking laws are unconstitutional on their face. On this basis they argue that Proposed Intervenors have no interest in the case because "the gravamen" of the Complaint relates only to Plaintiffs' property. Pls.' Mem. Law Opp'n Intervention at 4, 9, Dkt. No. 40-1 ("Opp'n").

Proposed Intervenors moved to intervene in this case based on Plaintiffs' First Amended Complaint. In the context of briefing this motion, Plaintiffs' about-face on the relief sought is a thinly veiled attempt to diminish Proposed Intervenors' significant interests in the case. However, this case, both as pled and as repackaged in Plaintiffs' opposition, threatens Proposed Intervenors' interests. It is unclear whether Plaintiffs will continue to seek a declaration that the fracking bans are unconstitutional on their face, which would be "the functional equivalent of an . . . injunction" by impeding the state from enforcing the bans. *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 391 (D. Mass. 2020); *see also* Proposed MTD at 11. But even a purely as-applied challenge threatens Proposed Intervenors' interests by potentially creating precedent that would

empower mineral rights owners across the state to seek compensation or an injunction. Such an outcome could result in fracking occurring in multiple locations or pressure New York to weaken its fracking laws. Regardless of how Plaintiffs intend to proceed, they clearly seek to weaken the state's protections against fracking, which Proposed Intervenors have an interest in defending.

### B. The Court Should Reject Plaintiffs' Attempt to Raise the Bar for Permissive Intervention

Plaintiffs rely on cases discussing intervention as of right and an irrelevant discussion of public nuisance law to argue that Proposed Intervenors must show an interest akin to an independent legal claim or equivalent to standing. Neither of those heightened standards apply here, where Proposed Intervenors seek permission to intervene defensively.

Permissive intervention under Rule 24(b)(1)(B) is distinct from intervention as of right under Rule 24(a), and courts may exercise discretion to grant permissive intervention where the intervenor "has a claim or defense that shares with the main action a common question of law or fact" even if not all criteria for intervention as of right are met. Fed. R. Civ. P. 24(b)(1)(B); *see United States v. N.Y.C. Hous. Auth.,* 326 F.R.D. 411, 418 (S.D.N.Y. 2018). Courts in the Second Circuit have repeatedly explained that, consistent with the plain language of the rule, a "single common question of law or fact" is enough to support permissive intervention. *Miller v. Silbermann*, 832 F. Supp. 663, 673 (S.D.N.Y. 1993) (quoting *McNeill v. N.Y.C. Hous. Auth*., 719 F. Supp. 233, 250 (S.D.N.Y. 1989)); *see also* Mem. Law Supp. Intervention at 11–12, Dkt. No. 28-1 ("Intervention Br."). "The words claim or defense are not to be read in a technical sense, but only require some interest on the part of the applicant." *Dow Jones & Co., Inc. v. U.S. Dep't of Justice*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995).

Improperly invoking Rule 24(a), Plaintiffs argue that "[a]pplicants who do not have a legally protectable interest are not entitled to intervention *as of right*." Opp'n at 3 (emphasis

added). Indeed, to argue that Proposed Intervenors lack "a legally protectable interest" Plaintiffs cite cases that use that standard only when considering intervention as of right and deny permissive intervention on other grounds. *See Floyd v. City of New York*, 770 F.3d 1051, 1060, 1060 n.27, 1062 (2d Cir. 2014) (citing Rule 24(a) in discussing the need for a "direct, substantial, and legally protectable" interest and then summarily noting the court would not disturb the ruling below under 24(b)(1)(B)); *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232–33 (2d Cir. 1996) (upholding the District Court's denial of permissive intervention on timeliness grounds only); *North Dakota ex rel Stenehjem v. United States*, 787 F.3d 918, 922–23 (8th Cir. 2015) (upholding denial of permissive intervention based on potential for delay);[1] *Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 346 (6th Cir. 2007) (finding no abuse of discretion in denial of permissive intervention based on potential for delay). Lack of a "legally protected interest" is not grounds to deny permissive intervention; rather, intervenors must simply have *some* interest that would be impaired by disposition of the action, as discussed further below.

Plaintiffs also incorrectly equate the requirement for intervenors to show an "interest" in the case with standing requirements. Seeking to import a standard from state standing law, Plaintiffs argue that because "none of the [Proposed Intervenors] would suffer harm that is any different than other members of the public who might live near the Woodwards' desired fracturing activities," the Proposed Intervenors therefore lack an interest in the case. Opp'n at 4–6. Plaintiffs' digression into public nuisance doctrine in New York state courts, and extensive discussion of *Davies v. S.A. Dunn & Co.* to argue Proposed Intervenors would not have standing to bring a public nuisance claim because they "did not assert a special injury" is irrelevant for

[1] The *Stenehjem* court also concluded that intervention required a showing of standing, which, as discussed below, the Supreme Court later clarified is not necessary for defensive intervention. 787 F.3d at 921.

two reasons. 156 N.Y.S.3d 457, 461 (3d Dep't 2021). First, Proposed Intervenors do not and need not assert a public nuisance claim; and second, they seek to intervene defensively.

Plaintiffs' attempt to graft the test for standing onto defensive intervention analysis violates the Supreme Court's express instructions. The Supreme Court has explained that a court "err[s] by inquiring into" an intervenor-defendant's "independent Article III standing" where an intervenor seeks the same relief as an existing defendant. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020); *see also Metro. Transp. Auth. v. Duffy*, No. 25-CV-1413, 2026 WL 588117, at *13 (S.D.N.Y. Mar. 3, 2026); *Marcelo Burlon S.R.L. v. Ailei Fashion*, No. 19-CV-11336, 2022 WL 3925159, at *3 (S.D.N.Y. Aug. 31, 2022); *Env't Integrity Project v. Wheeler*, No. 20-CV-1734, 2021 WL 6844257, at *2 (D.D.C. Jan. 27, 2021) ("[B]ecause the [proposed intervenors] are seeking to intervene as defendants, and are not invoking the Court's jurisdiction . . . they are not required to demonstrate that they have Article III standing.") (cleaned up). Plaintiffs' attempt to impose a heightened standard on Proposed Intervenors is unavailing and should be rejected.

### C. Defending Laws that Protect an Organization's Members Is a Well-Established Cognizable Interest for Permissive Intervention

In painting Proposed Intervenors' interest as merely "broader political advocacy" or a general aesthetic concern for the environment, Plaintiffs ignore the fracking prohibitions' direct and concrete benefits for Proposed Intervenors' members, supporters, and missions. Proposed Intervenors have shown that allowing fracking in New York would threaten public health and would harm the Catskills' natural resources and landscape, directly impacting their members, supporters, and organizational missions as well as the regional economy. Intervention Br. at 5–8, 12–16. If Plaintiffs prevail in this case and invalidate or undermine the state's prohibitions on

fracking, Proposed Intervenors' members' and supporters' substantive interests in clean air, safe drinking water, and maintaining a nature-based tourism economy would be directly impaired.

Plaintiffs tie themselves into knots attempting to distinguish cases that support permissive intervention here, primarily by arguing, erroneously, that Proposed Intervenors must have an economic interest in the outcome of the case. The law does not require an economic interest, but even if it did, opening New York up to fracking would pose an economic threat to Proposed Intervenors and their members and supporters. *See, e.g.*, Adams Decl. ¶¶ 5, 22. Dkt. No. 28-3 (explaining that the Catskills' "local economy depends on maintaining the pristine, natural beauty of the region," which would be degraded by fracking); van Rossum Decl. ¶ 8, Dkt. No. 28-4 (explaining that fracking would reduce members' property values and economically harm their communities). However, the law recognizes many interests beyond economic interests. Of all the cases Plaintiffs attempt to distinguish, only *NYPIRG* relied on an economic interest as grounds for intervention, and that case involved intervention as of right. Even there, the court held that the intervenor "has a sufficient interest to permit it to intervene since the validity of a regulation from which its members benefit is challenged." *N.Y. Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N. Y.*, 516 F.2d 350, 352 (2d Cir. 1975).

The other cases that Plaintiffs attempt to distinguish underscore the core principle that defending a law or regulation that benefits a group's members provides a sufficient interest to intervene permissively, regardless of whether that interest is economic. Contrary to Plaintiffs' insinuation, the intervenors in *Association of Connecticut Lobbyists LLC v. Garfield* were not private lobbyists protecting their economic interests, but rather "good government" nonprofits that had advocated for a law preventing lobbyists from donating money to political candidates, which would benefit the public at large as well as their own ability to lobby on a level playing

field. 241 F.R.D. 100, 103 (D. Conn. 2007). The intervenors in *Commack Self-Service Kosher Meats, Inc. v. Rubin* were individuals and organizations seeking to defend a kosher standards law that protected their non-economic interest in eating kosher food. 170 F.R.D. 93, 102 (E.D.N.Y. 1996). Plaintiffs attempt to distinguish the tenant organizations granted intervention to defend rent-stabilization laws in *335-7 LLC v. City of New York* by claiming that rent-stabilized tenants are a "narrow special interest," Opp'n at 9, but residents of New York's more than one million rent-stabilized apartments[2] likely exceed the population of the region overlying the Marcellus Shale. No. 20-CV-1053, 2020 WL 3100085, at *3 (S.D.N.Y. June 11, 2020). The tenant groups' interest in defending a law that "directly impacted" their members is analogous to Proposed Intervenors' interest in defending fracking laws here. *Id*.

Plaintiffs also fail to distinguish several cases granting intervention based specifically on organizations' "interest in protecting the public health and natural resources that may be affected" if a challenged law or regulation were invalidated. *Green Mountain Chrysler Plymouth Dodge Jeep v. Torti*, No. 2:05-CV-302, 2006 WL 8567240, at *4 (D. Vt. May 3, 2006). In *Green Mountain*, the court granted intervention to national environmental groups to defend greenhouse gas regulations, finding a cognizable interest due to "their members' personal stake in the improvement of local air quality and the problems posed by global warming, as well as their active involvement in developing [greenhouse gas] emission standards for automobiles in Vermont and other states." *Id*. That the case involved a facial challenge to the regulations was not relevant to the court's recognition of a cognizable interest based on air quality impacts and concern about climate change.[3] Similarly, in *Herdman v. Town of Angelica* the court recognized

[2] *See* N.Y.S. Homes & Cmty. Renewal, Office of Rent Administration 2025 Annual Report, at 3 (2025), https://hcr.ny.gov/system/files/documents/2025/12/ora_2025-annual-report_final.pdf.

[3] Plaintiffs also claim this case is distinguishable because the State "supported" intervention, but there is no indication in the decision that the State did anything different from here, where the State has consented to intervention. *Green Mountain*, 2006 WL 8567240, at *5.

"the personal interests of [intervenor's] individual members in the integrity of local air and water resources, in the continued rural and residential character of the Town, and in the maintenance of their property values" along with the fact that the intervenor group "took an active role in encouraging the Town to draft and adopt" the challenged ordinance, as interests that met the standard for intervention. 163 F.R.D. 180, 187 (W.D.N.Y. 1995).[4] Like the other organizations in these cases, Proposed Intervenors have a direct and cognizable interest in defending New York's fracking laws because those laws benefit and protect their members and supporters, and the enforceability of the laws would be directly impaired if Plaintiffs prevail in this case.

## II. ALTHOUGH INADEQUATE REPRESENTATION IS NOT REQUIRED FOR PERMISSIVE INTERVENTION, THERE IS A LEGITIMATE CONCERN THAT THE STATE MAY NOT ADEQUATELY REPRESENT THEIR INTERESTS

Permissive intervention does not require a proposed intervenor to demonstrate inadequate representation by another party. Even where courts have found adequate representation, they have permitted intervention based on the proposed intervenors' contribution to the case. Courts consider inadequacy of representation "at most, a minor factor" relevant to evaluating whether permissive intervention would cause undue delay or prejudice. *Marriott v. Cty. of Montgomery*, 227 F.R.D. 159, 167 (N.D.N.Y. 2005); *New York v. Reilly*, 143 F.R.D. 487, 490 (N.D.N.Y. 1992). This Court has concluded that where, as here, movants sought intervention while the case was "still in its infancy" and where "applications [were] timely," they need not show inadequacy of representation. *Reilly*, 143 F.R.D. at 490. Thus, so long as the core requirements for

[4] In *Herdman*, the intervenor's participation in a related administrative proceeding was not determinative for the court's finding that the group had a cognizable interest in defending the challenged law, but in any event, Proposed Intervenors did participate in the administrative proceeding leading up to New York's ban on high-volume hydraulic fracturing, which laid the groundwork for the statutes at issue. *See, e.g.*, Adams Decl. ¶¶ 11–15, Dkt. No. 28-3; Wurth Decl. ¶¶ 6–13, Dkt. No. 28-6.

permissive intervention in Federal Rule of Civil Procedure 24(b) are met—and Plaintiffs do not dispute that they are here—intervention does not hinge on adequacy of representation.

Although not a required showing for permissive intervention, the State may not adequately represent Proposed Intervenors' interests in this case. Proposed Intervenors have legitimate concerns about ensuring a strong defense of New York's fracking laws, given that fracking is a politically fraught topic and the State's position on the fracking prohibitions is at risk of reversal. As Plaintiffs have acknowledged, fracking is a key issue in the current gubernatorial race, Opp'n at 13–14, and the risk that a new administration would reverse the State's position counsels in favor of allowing intervention. Moreover, Proposed Intervenors' presentation of an argument the State did not raise—that the Complaint fails to state a facial challenge—further weighs in favor of intervention. *See Herdman*, 163 F.R.D. at 190 (proposed intervenors' decision to advance an argument the State did not indicated inadequacy of representation); Proposed MTD at 12–13.

Courts within the Second Circuit have granted permissive intervention where intervenors would "bring a different perspective to the case and will contribute relevant factual variations that may assist the court in addressing the constitutional issue raised" even if they did not satisfy the adequate representation factor under Rule 24(a)(2) for intervention as of right. *Commack*, 170 F.R.D. at 106; *see also Green v. Biden*, No. 24-CV-1975, 2024 WL 4932751, at *6 (E.D.N.Y. Dec. 2, 2024) (granting permissive intervention despite adequate representation where intervenors would "significantly contribute to full development of the underlying factual issues in the suit" based on their "long-standing advocacy" and "ongoing work and members' interests"); *Barry's Cut Rate Stores Inc. v. Visa, Inc.*, No. 05-MD-1720, 2021 WL 2646349, at

*12 (E.D.N.Y. June 28, 2021) (allowing group to permissively intervene despite adequate representation to provide different and additional perspective to litigation).

Proposed Intervenors have established their unique perspective by demonstrating their historical grassroots support for the fracking prohibitions as well as their expertise about the threats of fracking. Intervention Br. at 12–19. The State's consent indicates an acknowledgement that Proposed Intervenors "may be able to advocate for aspects of the case that are outside the State's purview, or beyond its area of expertise." *Green Mountain*, 2006 WL 8567240 at *5. While Plaintiffs provide the perspective of individuals who would benefit from fracking, Proposed Intervenors' members and supporters are most knowledgeable about its harms, which weighs in favor of intervention particularly in cases involving equitable relief. *See United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. at 418–19.

## III. INTERVENTION WOULD NOT PREJUDICE PLAINTIFFS, AND THEIR DEMAND THAT THE COURT PLACE CONDITIONS ON PROPOSED INTERVENORS' PARTICIPATION IS BASELESS

Plaintiffs make no attempt to argue prejudice in the body of their opposition, and the baseless claims in the conclusion of their brief fail to meaningfully refute Proposed Intervenors' commitment to the efficient adjudication of this case. Proposed Intervenors jointly filed a timely motion, concurrently with the deadline for the State's responsive papers and accompanied by a proposed Motion to Dismiss in a good-faith effort to streamline responsive briefing. Proposed Intervenors have also committed to adhering to any court-ordered briefing schedules and to cooperating with the parties to advance this case efficiently. They will consult with Defendants, who consent to intervention, to avoid any duplicative briefing or discovery. That consultation will also obviate any purported need for staggered briefing. Plaintiffs have made no showing of prejudice, nor have they provided any basis to question Proposed Intervenors' commitment to the efficient adjudication of this case.

DATED: August 28, 2026

*s/Rachel Spector*
Rachel Spector
Hillary Aidun
Andrew Saavedra
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
(212) 845-7387
rspector@earthjustice.org
haidun@earthjustice.org
asaavedra@earthjustice.org

*Counsel for Catskill Mountainkeeper*

*s/Kacy C. Manahan*
Kacy C. Manahan
Delaware Riverkeeper Network
925 Canal Street, Suite 3701
Bristol, PA 19007
(215) 369-1188 ext. 115
kacy@delawareriverkeeper.org

*Counsel for Delaware Riverkeeper Network*

Todd Ommen
Pace Environmental Litigation Clinic
78 North Broadway
White Plains, NY 10603
(914) 422-4343
tommen@law.pace.edu

*s/Erin E. Doran*
Erin E. Doran*
Food & Water Watch
1616 P Street NW, Suite 300
Washington, DC 20036
(202) 683-2451
edoran@fwwatch.org
**Admitted pro hac vice*

*Counsel for Food & Water Watch*